contractor, or agent of the Receivership Defendants, including any Individual Defendant, from control of, management of, or participation in, the affairs of the Receivership Defendants;

2.      Take exclusive custody, control, and possession of all Assets and Documents of, or in the possession, custody, or under the control of, the Receivership Defendants, wherever situated.  The Receiver shall have full power to divert mail and to sue for, collect, receive, take in possession, hold, and manage all Assets and Documents of the Receivership Defendants and other persons or entities whose interests are now held by or under the direction, possession, custody, or control of the Receivership Defendants. Provided, however, that the Receiver shall not attempt to collect any amount from a consumer or to allow the Receivership Defendants to continue to debit or otherwise charge a consumer's account, if the Receiver believes the consumer was a victim of the unfair or deceptive acts or practices alleged in the Complaint in this matter;

3.      Use any means necessary to take possession of and to secure all areas of the business premises of the Receivership Defendants.  Such steps may include, but are not limited to, the following as the Receiver deems necessary or advisable:  (a) serving this Order; (b) completing a written inventory of all receivership Assets; (c) obtaining pertinent information from all employees and other agents of the Receivership Defendants, including, but not limited to, the name, home address, Social Security number, job description, method of compensation, and all accrued and unpaid commissions and compensation of each such employee or agent; (d) videotaping all portions of the locations; (e) securing the locations by

18

changing the locks and disconnecting any computer modems or other means of access to the

computer or other records maintained at the locations; (f) requiring any persons present on

the premises at the time this Order is served to leave the premises, to provide the Receiver

with proof of identification, or to demonstrate to the satisfaction of the Receiver that such

persons are not removing from the premises Documents or Assets of the Receivership

Defendants; and/or (g) employ the assistance of law enforcement officers as the Receiver

deems necessary to implement the provisions of this Order;

      4.     Conserve, hold, and manage all receivership Assets, and perform all

acts necessary or advisable to preserve the value of those Assets, in order to prevent any

irreparable loss, damage, or injury to consumers or to creditors of the Receivership

Defendants, including, but not limited to, obtaining an accounting of the Assets and

preventing transfer, withdrawal, or misapplication of Assets, and including the authority to

liquidate or close out any open securities or commodity futures positions of the Receivership

Defendants;

      5.     Enter into contracts and purchase insurance as advisable or necessary;

      6.     Prevent the inequitable distribution of Assets and determine, adjust,

and protect the interests of consumers and creditors who have transacted business with the

Receivership Defendants;

      7.     Manage and administer the business of the Receivership Defendants

until further order of this Court by performing all incidental acts that the Receiver deems to

19

be advisable or necessary, which includes retaining, hiring, or dismissing any employees, independent contractors, or agents;

8. Choose, engage, and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists, as the Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order;

9. Make payments and disbursements from the receivership estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this Order.  The Receiver shall apply to the Court for prior approval of any payment of any debt or obligation incurred by the Receivership Defendants prior to the date of entry of this Order, except payments that the Receiver deems necessary or advisable to secure Assets of the Receivership Defendants, such as rental payments;

10. Determine and implement the manner in which the Receivership Defendants will comply with, and prevent violations of, this Order and all other applicable laws;

11. Institute, compromise, adjust, appear in, intervene in, or become party to such actions or proceedings in state, federal or foreign courts that the Receiver deems necessary and advisable to preserve or recover the Assets of the Receivership Defendants or that the Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order;

20

12.     Defend, compromise, adjust, or otherwise dispose of any or all actions or proceedings instituted in the past or in the future against the Receiver in his role as Receiver, or against the Receivership Defendants that the Receiver deems necessary and advisable to preserve the Assets of the Receivership Defendants or that the Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order;

13.     Continue and conduct the business of the Receivership Defendants in such manner, to such extent, and for such duration as the Receiver may in good faith deem to be necessary or appropriate to operate the business profitably and lawfully, if at all; provided, however, that the continuation and conduct of the business shall be conditioned upon the Receiver's good faith determination that the business can be lawfully operated at a profit using the Assets of the receivership estate;

14.     Issue subpoenas to obtain Documents and records pertaining to the receivership, and conduct discovery in this action on behalf of the receivership estate;

15.     Open one or more bank accounts as designated depositories for funds of the Receivership Defendants. The Receiver shall deposit all funds of the Receivership Defendants in such a designated account and shall make all payments and disbursements from the receivership estate from such an account;

16.     Maintain accurate records of all receipts and expenditures that he makes as Receiver;

17.     Cooperate with reasonable requests for information or assistance from any state or federal law enforcement agency; and

21

18.     File reports with the Court on a timely and reasonable basis.

**C.     COOPERATION WITH THE RECEIVER**

**IT IS FURTHER ORDERED** that:

1.     Defendants and their officers, agents, servants, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division, or other device, or any of them, shall fully cooperate with and assist the Receiver.  This cooperation and assistance shall include, but not be limited to:

a.     Providing any information to the Receiver that the Receiver deems necessary to exercising the authority and discharging the responsibilities of the Receiver under this Order;

b.     Providing any password required to access any computer, electronic file, or telephonic data in any medium; or

c.     Advising all Persons who owe money to the Receivership Defendants that all debts should be paid directly to the Receiver.

2.     Defendants and their officers, agents, servants, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division, or other device, or any of them, are hereby restrained and enjoined from directly or indirectly:

22

        a.      Transacting any of the business of the Receivership Defendants;

        b.      Destroying, secreting, defacing, transferring, or otherwise altering or disposing of any Documents of the Receivership Defendants, including, but not limited to, books, records, accounts, writings, drawings, graphs, charts, photographs, audio and video recordings, computer records, and other data compilations, electronically-stored records, or any other records of any kind or nature;

        c.      Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any Assets owned, controlled, or in the possession or custody of, or in which an interest is held or claimed by, the Receivership Defendants, or the Receiver;

        d.      Excusing debts owed to the Receivership Defendants;

        e.      Failing to notify the Receiver of any Asset, including accounts, of the Receivership Defendants held in any name other than the name of the Receivership Defendants, or by any person or entity other than the Receivership Defendants, or failing to provide any assistance or information requested by the Receiver in connection with obtaining possession, custody, or control of such Assets;

        f.      Doing any act or refraining from any act whatsoever to interfere with the Receiver's taking custody, control, possession, or managing of the Assets or Documents subject to this receivership; or to harass or interfere with the Receiver in any way; or to interfere in any manner with the exclusive jurisdiction of this Court over the

23

Assets or Documents of the Receivership Defendants; or to refuse to cooperate with the

Receiver or the Receiver's duly authorized agents in the exercise of their duties or authority

under any Order of this Court; or

g.      Filing, or causing to be filed, any petition on behalf of any of

the Receivership Defendants for relief under the United States Bankruptcy Code, 11 U.S.C. §

101, *et seq.*, without prior permission from this Court.

**D.      DELIVERY OF RECEIVERSHIP PROPERTY**

**IT IS FURTHER ORDERED** that:

1.      Immediately upon service of this Order upon them, or within such

period as may be permitted by the Receiver, Defendants or any other person or entity shall

transfer or deliver possession, custody, and control of the following to the Receiver:

a.      All Assets of the Receivership Defendants, including Assets

subject to repatriation pursuant to Section XI, *infra*;

b.      All Documents of the Receivership Defendants, including, but

not limited to, books and records of accounts, all financial and accounting records, balance

sheets, income statements, bank records (including monthly statements, canceled checks,

records of wire transfers, and check registers), client lists, title documents and other papers;

c.      All Assets belonging to members of the public now held by the

Receivership Defendants; and

d.      All keys, codes, and passwords necessary to gain or to secure

access to any Assets or Documents of the Receivership Defendants, including, but not limited

24

to, access to their business premises, means of communication, accounts, computer systems, mail boxes, or other property;

2.     In the event any person or entity fails to deliver or transfer any receivership Asset or Document or otherwise fails to comply with any provision of this Section, the Receiver may file *ex parte* an Affidavit of Non-Compliance regarding the failure. Upon filing of the affidavit, the Court may authorize, without additional process or demand, Writs of Possession or Sequestration or other equitable writs requested by the Receiver. The writs shall authorize and direct the United States Marshal or any sheriff or deputy sheriff of any county, or any other federal or state law enforcement officer, to seize the Asset, Document, or other thing and to deliver it to the Receiver.

### E.     TRANSFER OF FUNDS TO THE RECEIVER

**IT IS FURTHER ORDERED** that, upon service of a copy of this Order, all Financial Institutions, finance companies, commercial lending companies, credit card processing agents or agents providing electronic funds transfer services or automated clearing house processing, brokerage houses, escrow agents, money market or mutual funds, title companies, commodity futures merchants, commodity trading companies, precious metal dealers, trustees, or other Financial Institutions or depositories of any kind, shall cooperate with all reasonable requests of the Receiver relating to implementation of this Order, including transferring funds at his or her direction and producing records related to the Assets of the Receivership Defendants.

### F.     STAY OF ACTIONS

25

**IT IS FURTHER ORDERED** that:

1.      Except by leave of this Court, during pendency of the receivership ordered herein, Defendants and all other Persons and entities be and hereby are stayed from taking any action to establish or enforce any claim, right, or interest for, against, on behalf of, in, or in the name of, the Receivership Defendants, any of their subsidiaries, affiliates, partnerships, Assets, Documents, or the Receiver or the Receiver's duly authorized agents acting in their capacities as such, including, but not limited to, the following actions:

a.      Commencing, prosecuting, continuing, entering, or enforcing any suit or proceeding, except that such actions may be filed to toll any applicable statute of limitations;

b.      Accelerating the due date of any obligation or claimed obligation; filing, perfecting or enforcing any lien; taking or attempting to take possession, custody, or control of any Asset; attempting to foreclose, forfeit, alter, or terminate any interest in any Asset, whether such acts are part of a judicial proceeding, are acts of self-help, or otherwise, or setoff of any debt owing to the Receivership Defendants that arose before the date of this Order against any claim against the Receivership Defendants;

c.      Executing, issuing, serving, or causing the execution, issuance or service of, any legal process, including, but not limited to, attachments, garnishments, subpoenas, writs of replevin, writs of execution, or any other form of process whether specified in this Order or not; or

26

d.      Doing any act or thing whatsoever to interfere with the Receiver taking custody, control, possession, or management of the Assets or Documents subject to this receivership, or to harass or interfere with the Receiver in any way, or to interfere in any manner with the exclusive jurisdiction of this Court over the Assets or Documents of the Receivership Defendants.

2.      This Order does not stay:

a.      The commencement or continuation of a criminal action or proceeding;

b.      The commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power; or

c.      The enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.

3.      Except as otherwise provided in this Order, all persons and entities in need of documentation from the Receiver shall in all instances first attempt to secure such information by submitting a formal written request to the Receiver, and, if such request has not been responded to within thirty (30) days of receipt by the Receiver, any such person or entity may thereafter seek an Order of this Court with regard to the relief requested.

**G.      COMPENSATION OF RECEIVER**

**IT IS FURTHER ORDERED** that the Receiver and all personnel hired by the Receiver as herein authorized, including counsel to the Receiver and accountants, are entitled

27

to reasonable compensation for the performance of duties pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by them, from the Assets now held by, or in the possession or control of, or which may be received by the Receivership Defendants. The Receiver shall file with the Court and serve on the parties periodic requests for the payment of such reasonable compensation, with the first such request filed no more than sixty (60) days after the date of this Order. The Receiver shall not increase the hourly rates used as the bases for such fee applications without prior approval of the Court.

### H.    RECEIVER'S BOND

**IT IS FURTHER ORDERED** that no bond shall be required in connection with the appointment of the Receiver. Except for an act of gross negligence or greater, the Receiver shall not be liable for any loss or damage incurred by Defendants or by the Receiver's officers, agents or employees, or any other person, by reason of any act performed or omitted to be performed by the Receiver in connection with the discharge of the Receiver's duties and responsibilities.

## X.

### ACCESS TO BUSINESS PREMISES

**IT IS FURTHER ORDERED** that Defendants, and their officers, agents, servants, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division, or other device, or any of them, and the Receiver, shall allow the Commission's representatives, agents, and

28

assistants, as well as the Receivership Defendants' representatives, and the Individual

Defendants themselves, reasonable access to all of Receivership Defendants' business

premises, or any other premises where the Receivership Defendants conduct business or

telephone sales or customer service operations.  Such locations include, but are not limited to,

1650 Sand Lake Road, Suite 200, Orlando, Florida 32809, and 7550 Futures Drive, Suite

207, Orlando, Florida 32819.

The purpose of this access shall be to inspect and copy any and all books, records,

Documents, accounts, and other property owned by, or in the possession of, the Receivership

Defendants or their agents.  The Receiver shall have the discretion to determine the time,

manner, and reasonable conditions of such access.  The Commission may remove materials

from the Receivership Defendants' business premises to inspect, inventory, and copy such

materials within a reasonable time.  The Commission will keep the business records in the

same order and condition in which it found them.  The Commission shall return materials so

removed within five (5) business days of completing said inventory and copying.

## XI.

## REPATRIATION OF ASSETS AND DOCUMENTS LOCATED IN FOREIGN COUNTRIES

**IT IS FURTHER ORDERED** that Defendants shall:

A.      Within three (3) business days following service of this Order, take such steps

as are necessary to repatriate to the territory of the United States of America all Documents

29

and Assets that are located outside such territory and are held by or for Defendants or are under Defendants' direct or indirect control, jointly, severally, or individually;

   B.     Within three (3) business days following service of this Order, provide Plaintiff with a full accounting of all Documents and Assets that are located outside of the territory of the United States of America or that have been transferred to the territory of the United States of America pursuant to Subsection A above and are held by or for any Defendant or are under any Defendant's direct or indirect control, jointly, severally, or individually, including the addresses and names of any foreign or domestic Financial Institution or other entity holding the Documents and Assets, along with the account numbers and balances;

   C.     Hold and retain all such Documents and Assets and prevent any transfer, disposition, or dissipation whatsoever of any such Documents or Assets; and

   D.     Within three (3) business days following service of this Order, provide Plaintiff access to Defendants' records and Documents held by Financial Institutions or other entities outside the territorial United States, by signing and delivering to Plaintiff's counsel the Consent to Release of Financial Information attached to this Order as **Attachment C.**

## XII.

## INTERFERENCE WITH REPATRIATION

   **IT IS FURTHER ORDERED** that Defendants are hereby temporarily restrained and enjoined from taking any action, directly or indirectly, which may result in the encumbrance

30

or dissipation of foreign Assets, or in the hindrance of the repatriation required by the preceding Section XI of this Order, including, but not limited to:

A.      Sending any statement, letter, facsimile, email or wire transmission, or telephoning or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the terms of a foreign trust agreement, until such time that Assets have been fully repatriated pursuant to the preceding Section of this Order; and

B.      Notifying any trustee, protector or other agent of any foreign trust or other related entities of either the existence of this Order, or of the fact that repatriation is required pursuant to a Court Order, until such time as Assets have been fully repatriated pursuant to the preceding Section of this Order.

## XIII.

## EXPEDITED DISCOVERY

**IT IS FURTHER ORDERED** that pursuant to Federal Rules of Civil Procedure 30(a), 31(a), 34, and 45, and notwithstanding the provisions of Federal Rules of Civil Procedure 26(d) and (f), 30(a)(2)(A), and 31(a)(2)(A), the parties are granted leave, at any time after entry of this Order to:

A.      Take the deposition of any Person, whether or not a party, for the purpose of discovering the nature, location, status, and extent of the Assets of Defendants, and Defendants' affiliates and subsidiaries; the nature and location of Documents reflecting the business transactions of Defendants, and Defendants' affiliates and subsidiaries; the location

31

of any premises where Defendants, directly or through any third party, conduct business

operations; the Defendants' whereabouts; and/or the applicability of any evidentiary

privileges to this action; and

      B.     Demand the production of Documents from any Person, whether or not a

party, relating to the nature, status, and extent of the Assets of Defendants, and Defendants'

affiliates and subsidiaries; the nature and location of Documents reflecting the business

transactions of Defendants, and Defendants' affiliates and subsidiaries; the location of any

premises where Defendants, directly or through any third party, conduct business operations;

the Defendants' whereabouts; and/or the applicability of any evidentiary privileges to this

action.

      Three (3) days notice shall be deemed sufficient for any such deposition, five (5) days

notice shall be deemed sufficient for the production of any such Documents, and twenty-four

(24) hours notice shall be deemed sufficient for the production of any such Documents that

are maintained or stored only as electronic data. The provisions of this Section shall apply

both to parties to this case and to non-parties. The limitations and conditions set forth in

Federal Rules of Civil Procedure 30(a)(2)(A)(ii) and 31(a)(2)(A)(ii) regarding subsequent

depositions of an individual shall not apply to depositions taken pursuant to this Section.

Any such depositions taken pursuant to this Section shall not be counted toward any limit on

the number of depositions under the Federal Rules of Civil Procedure or the Local Rules of

the Middle District of Florida, including those set forth in Federal Rules of Civil Procedure

30(a)(2)(A) and 31(a)(2)(A). Service of discovery upon a party, taken pursuant to this

32

Section, shall be sufficient if made through the means described in Section XVII of this Order.

## XIV.

### DISTRIBUTION OF ORDER BY DEFENDANTS

**IT IS FURTHER ORDERED** that Defendants shall immediately provide a copy of this Order to each of their corporations, subsidiaries, affiliates, divisions, directors, officers, agents, partners, successors, assigns, employees, attorneys, agents, representatives, sales entities, sales persons, telemarketers, independent contractors, and any other Persons in active concert or participation with them.  Within five (5) calendar days following service of this Order by Plaintiff, each Defendant shall file with this Court and serve on Plaintiff, an affidavit identifying the names, titles, addresses, and telephone numbers of the Persons that Defendants have served with a copy of this Order in compliance with this provision.

## XV.

### EXPIRATION DATE OF TEMPORARY RESTRAINING ORDER

**IT IS FURTHER ORDERED** that the Temporary Restraining Order granted herein shall expire on _July 26_____, 2011, at _1:30 PM_ (Eastern Time), unless within such time the Order, for good cause shown, is extended, or unless, as to any Defendant, the Defendant consents that it should be extended for a longer period of time.

## XVI.

### ORDER TO SHOW CAUSE REGARDING PRELIMINARY INJUNCTION

33

**IT IS FURTHER ORDERED** that each Defendant shall appear before this Court on the 25~th~ day of July_____, 2011, at 12:00 P.m. at the United States Courthouse, United States District Court for the Middle District of Florida, Orlando Division, Orlando, Florida, Courtroom 6A, to show cause, if any, why this Court should not enter a preliminary injunction, pending final ruling on the Complaint, against said Defendants enjoining them from further violations of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and the TSR, 16 C.F.R. Part 310, continuing the freeze of Defendants' Assets, making the temporary Receiver's appointment permanent, and imposing such additional relief as may be appropriate.

## XVII.

### SERVICE OF PLEADINGS, MEMORANDA, AND OTHER EVIDENCE

**IT IS FURTHER ORDERED** that Defendants shall file with the Court and serve on Plaintiff's counsel any answering affidavits, pleadings, motions, expert reports or declarations, and/or legal memoranda no later than four (4) business days prior to the hearing on Plaintiff's request for a preliminary injunction.

Plaintiff may file responsive or supplemental pleadings, materials, affidavits, or memoranda with the Court and serve the same on counsel for Defendants no later than one (1) business day prior to the preliminary injunction hearing in this matter, provided that service shall be performed by personal or overnight delivery, by electronic filing, or by facsimile, and documents shall be delivered so that they shall be received by the other parties no later than 4:00 p.m. (Eastern Time) on the appropriate dates listed in this Section.

34

## XVIII.

## MOTION FOR LIVE TESTIMONY; WITNESS IDENTIFICATION

**IT IS FURTHER ORDERED** that the question of whether this Court should enter a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure enjoining the Defendants during the pendency of this action shall, in accordance with Local Rule 4.06 of the Middle District of Florida, be resolved on the pleadings, declarations, exhibits, and memoranda filed by, and oral argument of, the parties.  Live testimony shall be heard only on further order of this Court or on motion filed with the Court and served on counsel for the other parties at least three (3) business days prior to the preliminary injunction hearing in this matter.  Such motion shall set forth the name, address, and telephone number of each proposed witness, a detailed summary or affidavit revealing the substance of each proposed witness's expected testimony, and an explanation of why the taking of live testimony would be helpful to this Court.  Any papers opposing a timely motion to present live testimony or to present live testimony in response to another party's timely motion to present live testimony shall be filed with this Court and served on the other parties at least two (2) business days prior to the preliminary injunction hearing in this matter, *provided* that service shall be performed by personal or overnight delivery, by electronic filing, or by facsimile, and documents shall be delivered so that they shall be received by the other parties no later than 4:00 p.m. (Eastern Time) on the appropriate dates provided in this Section.

## XIX.

## SERVICE OF THIS ORDER

35

**IT IS FURTHER ORDERED** that copies of this Order may be distributed by U.S. First Class Mail, overnight delivery, facsimile, electronic mail, or personally, by agents or employees of Plaintiff, by agents or employees of the Receiver, by any law enforcement agency, or by private process server, upon any Person, Financial Institution, or other entity that may have possession or control of any property, property right, Document, or Asset of any Defendant, or that may be subject to any provision of this Order.  Service upon any branch or office of any Financial Institution or entity shall effect service upon the entire Financial Institution or entity.

XX.

**CONSUMER REPORTING AGENCIES**

**IT IS FURTHER ORDERED** that, pursuant to Section 604 of the Fair Credit Reporting Act, 15 U.S.C. § 1681b, any consumer reporting agency may furnish a consumer or credit report concerning any Defendant to Plaintiff.

XXI.

**TEMPORARY SEAL OF FILE**

**IT IS FURTHER ORDERED** that, good cause having been shown therefore, the docket sheet and all pleadings and papers filed in the above-captioned matter shall be sealed. The seal shall lift automatically without further order of the Court at 5:00 p.m., Eastern Time, on _Friday_, July _15_, 2011.  This Order shall only be construed to prohibit disclosure of any of the sealed information by the Office of the Clerk of Court.

36

## XII.

## MOTION TO FILE MEMORANDUM IN EXCESS OF TWENTY-FIVE PAGES

**IT IS FURTHER ORDERED** that the Commission's *ex parte* motion to file a memorandum in support of its *ex parte* motion for a temporary restraining order in excess of the page limit is granted.

## XXIII.

## CORRESPONDENCE WITH AND NOTICE TO PLAINTIFF

**IT IS FURTHER ORDERED** that for purposes of this Order, all correspondence and pleadings to the Commission shall be addressed to:

> William J. Hodor
> Theresa M. McGrew
> Federal Trade Commission
> 55 West Monroe Street, Suite 1825
> Chicago, Illinois 60603
> (312) 960-5634 (telephone)
> (312) 960-5600 (facsimile)
> whodor@ftc.gov (email, Hodor)
> tmcgrew@ftc.gov (email, McGrew)

37

## XXIV.

### JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter

for all purposes.


**SO ORDERED,** this 12th day of July, 2011, at 1:25 p.m.


_____

ANNE C. CONWAY, United States District Judge
Middle District of Florida

# ATTACHMENT I.

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**FEDERAL TRADE COMMISSION**

> Plaintiff,

vs.                                                    Case No. 8:11-cv-595-T-27MAP

**VACATION PROPERTY SERVICES, INC.,**                  **FILED UNDER SEAL**
**VACATION PROPERTY SELLERS, INC. d/b/a**
**Timeshare Experts, HIGHER LEVEL**
**MARKETING, INC. d/b/a Vacation Property Services,**
**ALBERT M. WILSON, DAVID S. TAYLOR, and**
**FRANK M. PERRY, JR.,**

> Defendants.
_____/

## TEMPORARY RESTRAINING ORDER

Plaintiff, the Federal Trade Commission ("FTC"), has filed a Complaint for Permanent Injunction and Other Equitable Relief pursuant to Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, and the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101-6108, and has applied *ex parte* for a temporary restraining order with asset freeze and an order to show cause why a Preliminary Injunction should not issue pursuant to Rule 65(b) of the Federal Rules of Civil Procedure.

### I. FINDINGS OF FACT

The Court, having considered the Complaint, the *ex parte* motion for a temporary restraining order, the declarations, exhibits, and the memorandum of law filed in support thereof, and being otherwise advised, finds that:

1.      This Court has jurisdiction over the subject matter of this case, and there is good

Case 8:12-cv-02500-JDW-MAP   Document 5-17   Filed 11/05/12   Page 24 of 79 PageID 1310
Page 103
Case 8:11-cv-00595-JDW-MAP   Document 8 (Ex Parte)   Filed 03/23/11   Page 2 of 33
PageID 86

cause to believe the Court will have jurisdiction over all parties hereto and that venue in this district is proper.

    2.     There is good cause to believe that Defendants Vacation Property Services, Inc.; Vacation Property Sellers, Inc. d/b/a Timeshare Experts; Higher Level Marketing, Inc. d/b/a Vacation Property Services; Albert M. Wilson; David S. Taylor and Frank M. Perry, Jr. (collectively "Defendants") have engaged in and are likely to continue engaging in acts and practices that violate Section 5(a) of the FTC Act, 15 U.S.C. § 45(a) and the FTC's Trade Regulation Rule entitled "Telemarketing Sales Rule" ("TSR"), 16 C.F.R. Part 310, and the FTC is therefore likely to prevail on the merits of this action.

    To establish liability under Section 5, the FTC must demonstrate that: "(1) there was a representation; (2) the representation was likely to mislead customers acting reasonably under the circumstances, and (3) the representation was material." *F.T.C. v. Tashman*, 318 F.3d 1273, 1277 (11th Cir. 2003). As demonstrated by the nineteen Consumer Declarations submitted in connection with the motion for a temporary restraining order, the FTC has established a likelihood of success in showing that Defendants have made unqualified, material misleading representations to consumers.

    Specifically, there is evidence that Defendants represented that: (1) Defendants have a buyer for a consumer's timeshare, (2) Defendants will refund their fee to a consumer if the sale of the consumer's timeshare does not take place, and (3) Defendants will refund their fee to a consumer if the consumer requests to rescind payment within seven days of the first appearance of the consumer's advertisement on one of Defendants' websites. The evidence indicates that the first representation is false or misleading because Defendants never came forward with any buyers for

2

the consumers' timeshares. (*E.g.*, Brimhall Decl. ¶¶ 7, 29; Rice Decl. ¶¶ 7, 25; Maddox Decl. ¶¶ 12, 34; Dreusicke Decl. ¶¶ 6-7, 19; Jeffrey Decl. ¶¶ 7, 16). There is evidence showing that the second representation was false or misleading because the consumers were not able to obtain a refund after the promised sale failed to occur. (*E.g.*, Rice Decl. ¶¶ 19-24). The evidence indicates that the third representation was false or misleading because Defendants refused to provide consumers with the information necessary to submit a timely cancellation notice (*e.g.*, Schmidt Decl. ¶¶ 12-19), and failed or refused to send the terms of cancellation so they would be received by the consumer before the expiration of the seven day rescission period. (*E.g.*, Campbell Decl. ¶ 12). These representations were material because they involve a core characteristic of the timeshare sales service and were used to induce consumers to purchase Defendants' services.

The FTC may enforce violations of the TSR as though they were violations of Section 5 of the FTC Act. 15 U.S.C. § 6105(b). Based on the Consumer Declarations, the FTC has demonstrated a likelihood of success on the merits of its claims that Defendants violated the TSR in four respects. First, there is evidence that Defendants made false or misleading statements to induce persons to pay for services, in violation of 16 C.F.R. § 310.3(a)(4). (*E.g.*, Brimhall Decl. ¶¶ 7-12; Rice Decl. ¶¶ 7-12; Maddox Decl. ¶¶ 9-15; Dreusicke Decl. ¶¶ 6-11; Campbell Decl. ¶¶ 4-12). Second, there is evidence that Defendants misrepresented material aspects of the nature or terms of their refund or cancellation policies, in violation of 16 C.F.R. § 310.3(a)(2)(iv). (*E.g.*, Rice Decl. ¶¶ 9-20; Schmidt Decl. ¶¶ 9-19). Third, there is evidence that Defendants engaged in initiating outbound telephone calls to numbers on the National Do Not Call Registry, in violation of 16 C.F.R. § 310.4(b)(1)(iii)(B). (*E.g.*, Skiba Decl. ¶¶ 4-5; Schmidt Decl. ¶¶ 5-6; Dreusicke Decl. ¶¶ 3-4; Jeffrey Decl. ¶¶ 5-6; Gardner Decl. ¶¶ 4-5). Fourth, there is evidence that Defendants engaged in initiating

3

outbound telephone calls to numbers within certain area codes without paying the required annual fee to access the numbers in that area code that appear on the National Do Not Call Registry, in violation of 16 C.F.R. § 310.8. (Vera Decl. ¶¶ 28-42).

     3.     There is good cause to believe that immediate and irreparable harm will result from Defendants' ongoing violations of the FTC Act and the TSR unless Defendants are restrained and enjoined by Order of this Court.

     4.     There is good cause to believe that immediate and irreparable damage to this Court's ability to grant effective final relief for consumers (including monetary restitution, rescission, disgorgement or refunds) will occur from the sale, transfer, destruction or other disposition or concealment by Defendants of their Assets, Documents, records or other evidence if Defendants are provided with advance notice of this Order, and that therefore, in accordance with Fed. R. Civ. P. 65(b), the interests of justice require that this order be granted without prior notice to Defendants. Thus, there is good cause for relieving the Commission of the duty to provide Defendants with prior notice of the Commission's application.

     5.     Good cause also exists for: (a) the appointment of a Temporary Receiver over Corporate Defendants Vacation Property Services, Inc.; Vacation Property Sellers, Inc. d/b/a Timeshare Experts; Higher Level Marketing, Inc. d/b/a Vacation Property Services; (b) the freezing of Defendants' Assets; and (c) ancillary relief.

     The FTC has demonstrated a likelihood that Defendants Wilson, Taylor, and Perry are individually liable and properly subject to an asset freeze. *See F.T.C. v. Gem Merchandising Corp.*, 87 F.3d 466, 470 (11th Cir. 1996). Specifically, there is evidence that Defendants Wilson, Taylor, and Perry have the ability to control the corporate Defendants. Wilson and Taylor are each identified

4

as 50% shareholders of Vacation Property Services, Inc. (Vera Decl., Ex. 37). Wilson is a current

officer of Vacation Property Services, Inc., and Taylor was a former officer. (*Id.*). And Perry is

identified as president of both Vacation Property Sellers, Inc. and Higher Level Marketing, Inc. (*Id.*,

Exs. 39, 40).

6.      Weighing the equities and considering Plaintiff's likelihood of ultimate success on

the merits, a temporary restraining order with an asset freeze, the appointment of a Temporary

Receiver, an order to show cause why a preliminary injunction should not issue and other equitable

relief is in the public interest.

7.      The FTC is an independent agency of the United States of America and therefore no

security is required for the issuance of a temporary restraining order. Fed. R. Civ. P. 65(c).

## II. DEFINITIONS

For the purpose of this Temporary Restraining Order ("Order"), the following definitions

shall apply:

1.      "Asset" means any legal or equitable interest in, right to, or claim to, any real,

personal, or intellectual property including, but not limited to, chattel, goods, instruments,

equipment, fixtures, general intangibles, effects, leaseholds, contracts, mail or other deliveries, shares

or stock, securities, inventory, checks, notes, accounts, credits, receivables (as those terms are

defined in the Uniform Commercial Code), insurance policies, lines of credit, cash, trusts (including

but not limited to asset protection trusts), lists of consumer names and reserve funds or any other

accounts associated with any payments processed by, or on behalf of, any Defendant, including, but

not limited to, such reserve funds held by payment processors, credit card processors, banks or other

financial institutions.

5

2.    "Assisting Others" includes providing any of the following goods or services to another entity: (1) performing customer service functions, including, but not limited to, charging consumers for products or services, or receiving or responding to consumer complaints; (2) formulating or providing, or arranging for the formulation or provision of, any sales script or other marketing material; (3) providing names of, or assisting in the generation of, potential customers; (4) performing or providing marketing or billing services of any kind; (5) processing credit and debit card payments; or (6) acting as an officer or director of a business, corporation or other entity.

3.    "Corporate Defendants" means Vacation Property Services, Inc.; Vacation Property Sellers, Inc. d/b/a Timeshare Experts; Higher Level Marketing, Inc. d/b/a Vacation Property Services, and their successors, assigns, affiliates or subsidiaries, as well as any fictitious business entities or business names created or used by any of the entities included in this definition.

4.    "Defendants" means all of the Individual Defendants and the Corporate Defendants, individually, collectively, or in any combination.

5.    "Document" is synonymous in meaning and equal in scope to the usage of the term in the Federal Rules of Civil Procedure 34(a), and includes writing, drawings, graphs, charts, Internet sites, Web pages, Web sites, electronic correspondence (including email, instant messages, text messages and other correspondence transmitted on cell phones, smart phones and other mobile devices), photographs, audio and video recordings, contracts, accounting data, advertisements (including, but not limited to, advertisements placed on the World Wide Web), FTP Logs, Server Access Logs, USENET Newsgroup postings, World Wide Web pages, books, written or printed records, handwritten notes, telephone logs, telephone scripts, receipt books, ledgers, personal and business canceled checks and check registers, bank statements, appointment books, computer records

6

and files, mobile electronic records and files, and other data compilations from which information can be obtained and translated, if necessary, through detection devices into reasonably usable form. A draft or non-identical copy is a separate document within the meaning of the term.

6.      "FTC Act" means the Federal Trade Commission Act codified at 15 U.S.C. §§ 41-58.

7.      "Individual Defendants" means, collectively and individually, Albert M. Wilson, David S. Taylor and Frank M. Perry, Jr.

8.      "Material" means likely to affect a person's choice of, or conduct regarding, goods or services.

9.      "National Do Not Call Registry" means the registry of telephone numbers maintained by the Commission, pursuant to Section 310.4(b)(1)(iii)(B) of the TSR, 16 C.F.R. § 310.4(b)(1)(iii)(B), of persons who do not wish to receive outbound telephone calls to induce the purchase of goods or services.

10.     "Person" shall be construed in its broadest sense and means both natural persons and artificial entities including, but not limited to, sole proprietorships, general partnerships, limited partnerships, joint ventures, limited liability partnerships, limited liability companies, corporations, subchapter S corporations, closely held corporations, professional corporations, business associations, business trusts, and all past and present officers, directors, agents, employees, parent companies, subsidiaries, predecessors, successors, affiliates, assigns, divisions or other persons acting or purporting to act on such person's behalf.

11.     "Plaintiff" or "Commission" or "FTC" means the Federal Trade Commission.

12.     "Receiver" means the temporary receiver appointed in Section XIII of this Order and any deputy receivers that shall be named by the temporary receiver.

7

13.   "Receivership Defendants" means the Corporate Defendants.

14.   "Representatives" means Defendants' officers, agents, servants, employees, and attorneys, and any other person or entity in active concert or participation with them, who receives actual notice of this Order by personal service or otherwise.

15.   "Telemarketing" means any plan, program, or campaign that is conducted to induce the purchase of goods or services or a charitable contribution by use of one or more telephones.

16.   "Telemarketing Sales Rule" or "TSR" means the Telemarketing Sales Rule set forth in 16 C.F.R. Part 310.

17.   "Timeshare" shall mean any right of ownership or occupancy in any vacation property or properties (including, but not limited to, condominiums, resorts, campgrounds and cruise ships) that provides rights-holders with certain periodic usage and/or occupancy rights. The term shall also include "points based" programs that provide similar ownership and/or occupancy benefits.

Each of the foregoing terms shall refer to either the singular or plural, as appropriate to the context in which they appear.

### III. PROHIBITED BUSINESS ACTIVITIES PURSUANT TO THE FTC ACT

IT IS THEREFORE ORDERED that Defendants and their Representatives, whether acting directly or through any entity, corporation, subsidiary, division, director, manager, member, affiliate, agent, independent contractor, accountant, financial advisor, or other device, in connection with the Telemarketing, advertising, marketing, promotion, offering for sale, or sale of any product or service, including, but not limited to, Timeshare resale or rental services, are hereby temporarily restrained and enjoined from misrepresenting, or Assisting Others in misrepresenting, directly or indirectly, expressly or by implication, any Material fact, including, but not limited to, that:

8

A.    Defendants have located a buyer or are likely to find a buyer for a consumer's Timeshare;

B.    Defendants will quickly sell a consumer's Timeshare;

C.    Defendants will refund their fee to a consumer if the sale of the consumer's Timeshare does not take place; and

D.    Defendants will refund their fee to a consumer if the consumer requests to rescind payment within seven days of the first appearance of the consumer's advertisement on one of Defendants' websites.

### IV. PROHIBITED BUSINESS ACTIVITIES PURSUANT TO THE TSR

**IT IS FURTHER ORDERED** that Defendants and their Representatives, whether acting directly or through any entity, corporation, subsidiary, division, director, manager, member, affiliate, agent, independent contractor, accountant, financial advisor, or other device, in connection with the Telemarketing, advertising, marketing, promotion, offering for sale, or sale of any product or service, including, but not limited to, Timeshare resale or rental services, are hereby temporarily restrained and enjoined from violating, or Assisting Others in violating, any provision of the TSR, 16 C.F.R. Part 310, including, but not limited to:

A.    Section 310.3(a)(4) of the TSR, 16 C.F.R. § 310.3(a)(4), by making any false or misleading statement, directly or by implication, to induce any person to pay for goods or services, including, but not limited to, the misrepresentations that: (1) Defendants have located a buyer or are likely to locate a buyer for a consumer's Timeshare who has agreed to pay a specified price, (2) Defendants will quickly sell a consumer's Timeshare, (3) Defendants will refund their fee to a consumer if the

9

sale of the consumer's Timeshare does not take place, and (4) Defendants will refund their fee to consumers if the consumer requests to rescind payment within seven days of the first appearance of the consumer's advertisement on one of Defendants' websites;

B.     Section 310.3(a)(2)(iv) of the TSR, 16 C.F.R. § 310.2(a)(2)(iv), by misrepresenting, directly or by implication, any Material aspect of the nature or terms of Defendants' refund, cancellation, exchange, or repurchase policies, including, but not limited to, the misrepresentations that: (1) Defendants will refund their fee to a consumer if the sale of the consumer's Timeshare does not take place; and (2) Defendants will refund their fee to consumers if the consumer requests to rescind payment within seven days of the first appearance of the consumer's advertisement on one of Defendants' websites;

C.     Section 310.4(b)(1)(iii)(B) of the TSR, 16 C.F.R. § 310.4(b)(1)(iii)(B), by engaging in, or causing others to engage in, initiating an outbound telephone call to a person's telephone number on the National Do Not Call Registry in connection with Telemarketing; and

D.     Section 310.8 of the TSR, 16 C.F.R. § 310.8, by initiating or causing others to initiate, in connection with Telemarketing, an outbound telephone call to a telephone number within a given area code when Defendants have not, either directly or through another Person, paid the required annual fee for access to the telephone numbers within that area code that are included in the National Do Not Call Registry.

10

Case 8:12-cv-02500-JDW-MAP   Document 5-17   Filed 11/05/12   Page 33 of 79 PageID 1319
Page 112
Case 8:11-cv-00595-JDW-MAP   Document 8 (Ex Parte)   Filed 03/23/11   Page 11 of 33
PageID 95

## V. ASSET FREEZE

**IT IS FURTHER ORDERED** that, pending a judicial determination of the FTC's request for a preliminary injunction, Defendants and their Representatives, whether acting directly or through any entity, corporation, subsidiary, division, director, manager, member, affiliate, independent contractor, accountant, financial advisor, or other device, are hereby temporarily restrained and enjoined from:

A.     Transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, relinquishing, spending, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing any funds, real or personal property, accounts, contracts, shares of stock, lists of consumer names, or other Assets, or any interest therein, wherever located, including outside the United States, that are:

1.     owned, controlled or held, in whole or in part, by any Defendant;

2.     held, in whole or in part, for the direct or indirect benefit of, any Defendant;

3.     in the actual or constructive possession of any Defendant;

4.     held by an agent of any Defendant as a retainer for the agent's provision of services to Defendants;

5.     owned or controlled by, or in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed or controlled by any of the Defendants, or of which any Defendant is an Officer, Director, Member, or Manager. This includes, but is not limited to,

11

any Assets held by, for, or subject to access by, any of the Defendants at any

bank or savings and loan institution, or at/with any broker-dealer, escrow

agent, title company, insurance company, commodity trading company,

precious metal dealer, payment processor, credit card processor, acquiring

bank, merchant bank, independent sales organization, third party processor,

payment gateway or other financial institution or depository of any kind; or

6.   held in any account for which any Defendant is, or was on the date that this

Order was signed, an authorized signor.

B.   Opening or causing to be opened any safe deposit boxes, commercial mail boxes, or

storage facilities titled in the name of any Defendant, either individually or jointly,

or subject to access by any Defendant;

C.   Obtaining a personal or secured loan encumbering the Assets of any Defendant, or

subject to access by any Defendant;

D.   Incurring liens or other encumbrances on real property, personal property, or other

Assets in the name, individually or jointly, of any Defendant or of any corporation,

partnership, or other entity directly or indirectly owned, managed, or controlled by

any Defendant; or

E.   Incurring charges or cash advances on any credit or bank card issued in the name,

individually or jointly, of any Corporate Defendant or any corporation, partnership,

or other entity directly or indirectly owned, managed, or controlled by any Defendant

or of which any Defendant is an Officer, Director, Member, or Manager. This

includes, but is not limited to, any corporate bank card or corporate credit card

12

account for which any Defendant is, or was on the date that this Order was signed,

an authorized signor.

**IT IS FURTHER ORDERED** that the Assets affected by this Section shall include Assets:

(a) existing as of the date this Order was entered, or (b) acquired by any Defendant following entry

of this Order, if such Assets are derived from any activity that is the subject of, or is prohibited by,

this Order.

## VI. DUTIES OF ASSET HOLDERS

**IT IS FURTHER ORDERED** that, pending a judicial determination of the FTC's request

for a preliminary injunction, any financial or brokerage institution, credit card processor, payment

processor, merchant bank, acquiring bank, independent sales organization, third party processor,

payment gateway, insurance company, business entity, or person served with a copy of this Order

that (a) holds, controls, or maintains custody of any account or Asset of any Defendant, (b) holds,

controls, or maintains custody of any Asset associated with credits, debits or charges made on behalf

of any Defendant, including but not limited to, reserve funds held by payment processors, credit card

processors, payment merchant banks, acquiring banks, independent sales organizations, third party

processors, payment gateways, insurance companies or other entities, or (c) has held, controlled, or

maintained custody of any such account or Asset at any time since the date of entry of this Order

shall:

A.      Hold and retain within its control and prohibit the withdrawal, removal, assignment,

         transfer, pledge, encumbrance, disbursement, dissipation, relinquishment,

         conversion, sale, or other disposal of any such Assets, as well as all Documents or

         other property related to such Assets, except by further order of this Court;

13

**B.**      Deny any person, except the Receiver acting pursuant to Section XIV of this Order, access to any safe deposit box, commercial mail box, or storage facility that is:

    **1.**      titled in the name of any Defendant, either individually or jointly; or

    **2.**      otherwise subject to access by any Defendant;

**C.**      Provide the FTC's counsel, within five (5) days of receiving a copy of this Order, a sworn statement setting forth:

    **1.**      the identification number of each account or Asset:

        **a)**      titled in the name, individually or jointly, of any of the Defendants;

        **b)**      held on behalf of, or for the benefit of, any of the Defendants; or

        **c)**      associated with credit or debit charges made on behalf of Defendants;

    **2.**      the balance of each such account, or a description of the nature and value of each such Asset as of the close of business on the day on which this Order is served, and, if the account or other Asset has been closed or removed, the date closed or removed, the total funds removed in order to close the account, and the name of the person or entity to whom such account or other Asset was remitted; and

    **3.**      the identification of any safe deposit box, commercial mail box, or storage facility that is either titled in the name, individually or jointly, of any of the Defendants, or is otherwise subject to access by any of the Defendants; and

**D.**      Upon the request of the FTC, promptly provide the FTC with copies of all records or other documentation pertaining to such account or Asset, including, but not

14

limited to, originals or copies of account applications, account statements, signature

cards, checks, drafts, deposit tickets, transfers to and from the accounts, including

wire transfers and wire transfer instructions, all other debit and credit instruments or

slips, currency transaction reports, 1099 forms, and all logs and records pertaining

to such safe deposit boxes, commercial mail boxes and storage facilities.

## VII. FINANCIAL STATEMENTS

**IT IS FURTHER ORDERED** that each Defendant, within five (5) days of service of this

Order upon them, shall prepare and deliver to Counsel for the Commission and to the Receiver

completed financial statements on the forms attached to this Order as **Attachment A** (Financial

Statement of Individual Defendant) for themselves individually, and **Attachment B** (Financial

Statement of Corporate Defendant) for each business entity under which they conduct business or

of which they are an officer, and for each trust for which any Defendant is a trustee. The financial

statements shall be accurate as of the date of entry of this Order and signed under penalty of perjury.

Each Defendant shall include in the financial statements all information requested in the statements,

including a full accounting of all funds and Assets, whether located inside or outside of the United

States, that are: (a) titled in the name of such Defendant, jointly, severally, or individually; (b) held

by any person or entity for the benefit of such Defendant; or (c) under the direct or indirect control

of such Defendant. Defendants shall attach to these completed financial statements copies of all

local, state, provincial, and federal income and property tax returns, with attachments and schedules,

as called for by the instructions to the financial statements.

## VIII. REPATRIATION OF ASSETS AND DOCUMENTS

**IT IS FURTHER ORDERED** that within five (5) days following the service of this Order,

15

each Defendant shall:

> A.   Transfer to the territory of the United States and deliver to the Receiver all funds, Documents, and Assets located in foreign countries which are: (1) titled in the name individually or jointly of any Defendant; or (2) held by any person or entity, for the benefit of any Defendant; or (3) under the direct or indirect control of any Defendant, whether jointly or singly;

> B.   Provide the Commission access to all records of accounts or Assets of any Defendant held by financial institutions located outside the territorial United States by signing the Consent to Release of Financial Records appended to this Order as **Attachment C.**

## IX. NONINTERFERENCE WITH REPATRIATION

**IT IS FURTHER ORDERED** that Defendants and their Representatives, whether acting directly or through any entity, corporation, subsidiary, division, director, manager, member, affiliate, independent contractor, accountant, financial advisor, or other device, are hereby temporarily restrained and enjoined from taking any action, directly or indirectly, which may result in the encumbrance or dissipation of foreign Assets, or in the hindrance of the repatriation required by Section VIII of this Order, including, but not limited to:

> A.   Sending any statement, letter, fax, email or wire transmission, or telephoning or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the terms of a foreign trust agreement until such time that all Assets have been fully repatriated pursuant to Section VIII of this Order; or

16

    B.      Notifying any trustee, protector or other agent of any foreign trust or other related

entities of either the existence of this Order, or of the fact that repatriation is required

pursuant to a court order, until such time that all Assets have been fully repatriated

pursuant to Section VIII of this Order.

## X. CONSUMER CREDIT REPORTS

**IT IS FURTHER ORDERED** that pursuant to Section 604(1) of the Fair Credit Reporting

Act, 15 U.S.C. § 1681b(1), any consumer reporting agency served with this Order shall promptly

furnish consumer reports as requested concerning any Defendant to counsel for the Commission.

## XI. PRESERVATION OF RECORDS

**IT IS FURTHER ORDERED** that Defendants and their Representatives, whether acting

directly or through any entity, corporation, subsidiary, division, director, manager, member, affiliate,

independent contractor, accountant, financial advisor, or other device, are hereby temporarily

restrained and enjoined from:

    A.      Destroying, erasing, mutilating, concealing, altering, transferring, or otherwise

disposing of, in any manner, directly or indirectly, Documents that relate to: (1) the

business, business practices, Assets, or business or personal finances of any

Defendant, (2) the business practices or finances of entities directly or indirectly

under the control of any Defendant, or (3) the business practices or finances of

entities directly or indirectly under common control with any other Defendant;

    B.      Failing to create and maintain Documents that, in reasonable detail, accurately, fairly,

and completely reflect Defendants' incomes, disbursements, transactions, and use of

the Defendants' Assets; and

17

C.      Creating, operating, or exercising any control over any new business entity, whether

newly formed or previously inactive, including any partnership, limited partnership,

joint venture, sole proprietorship, or corporation, without first providing counsel for

the Commission with a written statement disclosing: (1) the name of the business

entity; (2) the address and telephone number of the business entity; (3) the names of

the business entity's officers, directors, principals, managers, and employees; and (4)

a detailed description of the business entity's intended activities.

## XII. PROHIBITION ON RELEASE OF CUSTOMER INFORMATION

**IT IS FURTHER ORDERED** that Defendants and their Representatives, whether acting

directly or through any entity, corporation, subsidiary, division, director, manager, member, affiliate,

independent contractor, accountant, financial advisor, or other device, are hereby temporarily

restrained and enjoined from:

A.      Selling, renting, leasing, transferring, or otherwise disclosing the name, address,

telephone number, credit card number, bank account number, email address, or other

identifying information of any person who paid money to a Defendant for

Timeshare-related services or products or who were contacted or are on a list to be

contacted by any Defendant; and

B.      Benefitting from or using the name, address, birth date, telephone number, email

address, Social Security number, Social Insurance number, credit card number, bank

account number, or other financial or identifying personal information of any Person

from whom or about whom any Defendant obtained such information in connection

with any activity that pertains to the subject matter of this Order.

18

Case 8:11-cv-00595-JDW-MAP    Document 8 (Ex Parte)    Filed 03/23/11    Page 19 of 33
PageID 103

Provided, however, that the Defendants may disclose such identifying information to a law

enforcement agency or as required by any law, regulation, or court order.

## XIII. APPOINTMENT OF TEMPORARY RECEIVER

**IT IS FURTHER ORDERED** that Mark J. Bernet, Esq. is appointed temporary receiver for

the Receivership Defendants and any of their affiliates, subsidiaries, divisions, or telephone sales or

customer service operations, wherever located, with the full power of an equity receiver. The

Receiver shall be the agent of this Court, and solely the agent of this Court, in acting as Receiver

under this Order. The Receiver shall be accountable directly to this Court.

## XIV. RECEIVER'S DUTIES

**IT IS FURTHER ORDERED** that the Receiver is authorized and directed to accomplish

the following:

A.     Assume full control of the Receivership Defendants by removing, as the Receiver

deems necessary or advisable, any director, officer, independent contractor,

employee, or agent of any of the Receivership Defendants, including any Defendant,

from control of, management of, or participation in, the affairs of the Receivership

Defendants;

B.     Take exclusive custody, control, and possession of all Assets and Documents of, or

in the possession, custody, or under the control of, the Receivership Defendants,

wherever situated. The Receiver shall have full power to divert mail and to sue for,

collect, receive, take in possession, hold, and manage all Assets and Documents of

the Receivership Defendants and other persons or entities whose interests are now

under the direction, possession, custody, or control of, the Receivership Defendants.

19

Case 8:11-cv-00595-JDW-MAP   Document 8 (Ex Parte)   Filed 03/23/11   Page 20 of 33
PageID 104

The Receiver shall assume control over the Receivership Defendants' income and profits and all sums of money now or hereafter due or owing to the Receivership Defendants. Provided, however, that the Receiver shall not attempt to collect any amount from a consumer if the Receiver believes the consumer was a victim of the unfair or deceptive acts or practices or other violations of law alleged in the Complaint in this matter, without prior Court approval;

C.   Take all steps necessary to secure and take exclusive custody of each location from which the Receivership Defendants operate their businesses. Such steps may include, but are not limited to, any of the following, as the Receiver deems necessary or advisable: (1) serving this Order; (2) completing a written inventory of all Receivership assets; (3) obtaining pertinent information from all employees and other agents of the Receivership Defendants, including, but not limited to, the name, home address, Social Security Number, job description, company history, passwords or access codes, method of compensation, and all accrued and unpaid commissions and compensation of each such employee or agent; (4) photographing and video taping any or all portions of the location; (5) securing the location by changing the locks and disconnecting any computer modems or other means of access to the computer or other records maintained at that location; and (6) requiring any persons present on the premises at the time this Order is served to leave the premises, to provide the Receiver with proof of identification, or to demonstrate to the satisfaction of the Receiver that such persons are not removing from the premises Documents or Assets of the Receivership Defendants. Law enforcement personnel, including, but not

20

limited to, police or sheriffs, may assist the Receiver in implementing these provisions in order to keep the peace and maintain security. If requested by the Receiver, the United States Marshal will provide appropriate and necessary assistance to the Receiver to implement this Order and is authorized to use any necessary and reasonable force to do so;

D.    Conserve, hold, and manage all Assets of the Receivership Defendants, and perform all acts necessary or advisable to preserve the value of those Assets in order to prevent any irreparable loss, damage, or injury to consumers or creditors of the Receivership Defendants, including, but not limited to, obtaining an accounting of the Assets and preventing the unauthorized transfer, withdrawal, or misapplication of Assets;

E.    Enter into and cancel contracts, and purchase insurance as advisable or necessary;

F.    Prevent the inequitable distribution of Assets and determine, adjust, and protect the interests of consumers and creditors who have transacted business with the Receivership Defendants;

G.    Manage and administer the business of the Receivership Defendants until further order of this Court by performing all incidental acts that the Receiver deems to be advisable or necessary, which includes but is not limited to retaining, hiring, or dismissing any employees, independent contractors, or agents;

H.    Prevent the destruction or erasure of any web page or website registered to and operated, in whole or in part, by Defendants;

I.    Take all steps necessary to ensure that any of Defendants' web pages or websites

21

relating to Timeshares including, but not limited to, *alllandsales.com, timeshareexperts.com, besttimesharesales.com, sellingtimeshare.com, soldmytimeshare.com, vacationsbuyowner.com* and *rentingtimeshare.com,* cannot be accessed by the public, or are modified for consumer education and/or informational purposes;

J.    Choose, engage, and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists, as the Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order;

K.    Make payments and disbursements from the receivership estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this Order. The Receiver shall apply to the Court for prior approval of any payment of any debt or obligation incurred by the Receivership Defendants prior to the date of entry of this Order, except payments that the Receiver deems necessary or advisable to secure Assets of the Receivership Defendants, such as rental payments;

L.    Suspend business operations of the Receivership Defendants if in the judgment of the Receiver such operations cannot be continued legally or profitably;

M.    Institute, compromise, adjust, appear in, intervene in, or become party to such actions or proceedings in state, federal or foreign courts or arbitration proceedings as the Receiver deems necessary and advisable to preserve or recover the Assets of the Receivership Defendants, or that the Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order, including but not limited to, actions

22

challenging fraudulent or voidable transfers;

N.    Defend, compromise, adjust, or otherwise dispose of any or all actions or proceedings instituted in the past or in the future against the Receiver in his role as Receiver, or against the Receivership Defendants, as the Receiver deems necessary and advisable to preserve the Assets of the Receivership Defendants, or as the Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order;

O.    Issue subpoenas to obtain Documents and records pertaining to the Receivership, and conduct discovery in this action on behalf of the Receivership estate;

P.    Open one or more bank accounts as designated depositories for funds of the Receivership Defendants. The Receiver shall deposit all funds of the Receivership Defendants in such a designated account and shall make all payments and disbursements from the Receivership estate from such an account. The Receiver shall serve copies of monthly account statements on all parties;

Q.    Maintain accurate records of all receipts and expenditures incurred as Receiver;

R.    Cooperate with reasonable requests for information or assistance from any state or federal law enforcement agency; and

S.    File timely reports with the Court at reasonable intervals, or as otherwise directed by the Court.

## XV. TRANSFER OF RECEIVERSHIP PROPERTY TO RECEIVER

**IT IS FURTHER ORDERED** that Defendants, their Representatives, and any other person, with possession, custody or control of property of or records relating to the Receivership Defendants shall, upon notice of this Order by personal service or otherwise, immediately notify the Receiver

23

of, and, upon receiving a request from the Receiver, immediately transfer or deliver to the Receiver

possession, custody, and control of, the following:

A.   All Assets of the Receivership Defendants;

B.   All Documents of the Receivership Defendants, including, but not limited to, books

and records of accounts, all financial and accounting records, balance sheets, income

statements, bank records (including monthly statements, canceled checks, records of

wire transfers, and check registers), client lists, title Documents and other papers;

C.   All computers, electronic devices and machines and data in whatever form used to

conduct the business of the Receivership Defendants;

D.   All Assets and Documents belonging to other persons or entities whose interests are

under the direction, possession, custody, or control of the Receivership Defendants;

and

E.   All keys, codes, user names and passwords necessary to gain or to secure access to

any Assets or Documents of the Receivership Defendants, including, but not limited

to, access to their business premises, means of communication, accounts, computer

systems, or other property.

In the event that any person or entity fails to deliver or transfer any Asset or Document, or

otherwise fails to comply with any provision of this Section, the Receiver may file *ex parte* an

Affidavit of Non-Compliance regarding the failure. Upon filing of the affidavit, the Court may

authorize, without additional process or demand, Writs of Possession or Sequestration or other

equitable writs requested by the Receiver. The writs shall authorize and direct the United States

Marshal or any sheriff or deputy sheriff of any county, or any other federal or state law enforcement

24

officer, to seize the Asset, Document, or other item covered by this Section and to deliver it to the Receiver.

## XVI. PROVISION OF INFORMATION TO RECEIVER

**IT IS FURTHER ORDERED** that Defendants shall provide to the Receiver, immediately upon request, the following:

A.   A list of all Assets and property, including accounts, of the Receivership Defendants that are held in any name other than the name of a Receivership Defendant, or by any person or entity other than a Receivership Defendant; and

B.   A list of all agents, employees, officers, servants or those persons in active concert and participation with the Individual Defendants and Receivership Defendants, who have been associated or done business with the Receivership Defendants.

## XVII. COOPERATION WITH THE RECEIVER

**IT IS FURTHER ORDERED** that Defendants, their Representatives, and any other person served with a copy of this Order shall fully cooperate with and assist the Receiver in taking and maintaining possession, custody, or control of the Assets and Documents of the Receivership Defendants. This cooperation and assistance shall include, but not be limited to: providing information to the Receiver that the Receiver deems necessary to exercise the authority and discharge the responsibilities of the Receiver under this Order; providing any password required to access any computer, electronic file, or telephonic data in any medium; advising all persons who owe money to the Receivership Defendants that all debts should be paid directly to the Receiver; and transferring funds at the Receiver's direction and producing records related to the Assets and sales of the Receivership Defendants. The entities obligated to cooperate with the Receiver under this provision

25

include, but are not limited to, banks, broker-dealers, savings and loans, escrow agents, title companies, commodity trading companies, precious metals dealers, credit card processors, payment processors, merchant banks, acquiring banks, independent sales organizations, third party processors, payment gateways, insurance companies and other financial institutions and depositories of any kind, as well as all common carriers, telecommunications companies and third-party billing agents.

## XVIII. INTERFERENCE WITH THE RECEIVER

**IT IS FURTHER ORDERED** that Defendants and their Representatives, whether acting directly or through any entity, corporation, subsidiary, division, director, manager, member, affiliate, independent contractor, accountant, financial advisor, or other device, except as provided herein, as stipulated by the parties, or as directed by further order of the Court, are hereby restrained and enjoined from:

A.   Interfering with the Receiver's efforts to manage, or take custody, control, or possession of, the Assets or Documents subject to this Receivership;

B.   Transacting any of the business of the Receivership Defendants;

C.   Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any Assets owned, controlled, or in the possession or custody of, or in which an interest is held or claimed by, the Receivership Defendants or the Receiver; and

D.   Refusing to cooperate with the Receiver or the Receiver's duly authorized agents in the exercise of their duties or authority under any order of this Court.

## XIX. STAY OF ACTIONS AGAINST RECEIVERSHIP DEFENDANTS

**IT IS FURTHER ORDERED** that, except by leave of this Court, during pendency of the

Receivership ordered herein, Defendants, their Representatives, corporations, subsidiaries, divisions, or affiliates, and all investors, creditors, stockholders, lessors, customers and other persons seeking to establish or enforce any claim, right, or interest against or on behalf of Defendants, and all others acting for or on behalf of such persons, are hereby enjoined from taking action that would interfere with the exclusive jurisdiction of this Court over the Assets or Documents of the Receivership Defendants, including, but not limited to:

A.   Petitioning, or assisting in the filing of a petition, that would cause any Receivership Defendant to be placed in bankruptcy;

B.   Commencing, prosecuting, or continuing a judicial, administrative, or other action or proceeding against the Receivership Defendants, including the issuance or employment of process against the Receivership Defendants, except that such actions may be commenced if necessary to toll any applicable statute of limitations;

C.   Filing or enforcing any lien on any Asset of the Receivership Defendants, taking or attempting to take possession, custody, or control of any Asset of the Receivership Defendants, or attempting to foreclose, forfeit, alter, or terminate any interest in any Asset of the Receivership Defendants, whether such acts are part of a judicial proceeding, are acts of self-help, or otherwise;

D.   Initiating any other process or proceeding that would interfere with the Receiver's efforts to manage or take custody, control, or possession of, the Assets or Documents subject to this receivership.

*Provided that*, this Order does not stay: (I) the commencement or continuation of a criminal action or proceeding; (ii) the commencement or continuation of an action or proceeding by a

27

governmental unit to enforce such governmental unit's police or regulatory power; or (iii) the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.

## XX. COMPENSATION OF RECEIVER

**IT IS FURTHER ORDERED** that the Receiver and all personnel hired by the Receiver as herein authorized, including counsel to the Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by them, from the Assets now held by, in the possession or control of, or which may be received by, the Receivership Defendants. The Receiver shall file with the Court and serve on the parties periodic requests for the payment of such reasonable compensation, with the first such request filed no more than sixty (60) days after the date of entry of this Order. The Receiver shall not increase the hourly rates used as the bases for such fee applications without prior approval of the Court.

## XXI. RECEIVER'S BOND

**IT IS FURTHER ORDERED** that the Receiver shall file with the Clerk of this Court a bond in the sum of $5,000 with sureties to be approved by the Court, conditioned that the Receiver will well and truly perform the duties of the office and abide by and perform all acts the Court directs. 28 U.S.C. § 754.

## XXII. ACCESS TO BUSINESS OFFICES AND RECORDS

**IT IS FURTHER ORDERED** that, in order to allow the Commission and the Receiver to preserve Assets and evidence relevant to this action, and to expedite discovery, Plaintiff and Receiver, and their representatives, agents, and assistants, shall have immediate access to the

28

business premises of the Receivership Defendants. Such locations include, but are not limited to:

7005 4th Street North, Suite 5, St. Petersburg, Florida 33703; 300 31st Street North, Suite 615, St.

Petersburg, Florida 33713; and 300 31st Street North, Suite 602, St. Petersburg, Florida 33713. The

Commission and the Receiver, and their representatives, agents, and assistants, are authorized to

employ the assistance of the U.S. Marshal's office and other federal, state and local law enforcement

officers as they deem necessary to effect service and to implement peacefully the provisions of this

Order. The Commission and the Receiver, and their representatives, agents, and assistants, are

authorized to remove Documents from the Receivership Defendants' premises in order that they may

be inspected, inventoried, and copied for the purpose of preserving discoverable material in

connection with this action.

　　　Furthermore, the Receiver shall allow the Defendants reasonable access to the premises and

business records of the Receivership Defendants within his possession for the purpose of inspecting

and copying materials relevant to this action. The Receiver shall have the discretion to determine the

time, manner, and reasonable conditions of such access.

## XXIII. DISTRIBUTION OF ORDER BY DEFENDANTS

　　　**IT IS FURTHER ORDERED** that Defendants shall immediately provide a copy of this

Order to each affiliate, sales entity, successor, assign, member, officer, director, employee, agent,

independent contractor, client company, servant, attorney, spouse, subsidiary, division, and

representative of any Defendant, and shall, within five (5) days from the date of service of this Order,

provide the counsel for the FTC with a sworn statement that Defendants have complied with this

provision of the Order. Such statement shall include the names and addresses of each such person

or entity who received a copy of this Order.

29

Case 8:12-cv-02500-JDW-MAP    Document 5-17    Filed 11/05/12    Page 52 of 79 PageID 1338
Page 131
Case 8:11-cv-00595-JDW-MAP    Document 8 (Ex Parte)    Filed 03/23/11    Page 30 of 33
PageID 114

Furthermore, Defendants shall not take any action that would encourage officers, agents, members, directors, employees, salespersons, independent contractors, attorneys, subsidiaries, affiliates, successors, assigns or other persons or entities in active concert or participation with them to disregard this Order or believe that they are not bound by its provisions.

## XXIV. LIMITED EXPEDITED DISCOVERY

**IT IS FURTHER ORDERED** that, notwithstanding the provisions of Federal Rules of Civil Procedure 26(d) and (f) and 30(a)(2)(A)(iii), and pursuant to Federal Rules of Civil Procedure 30(a), 34, and 45, the Commission is granted leave, at any time after service of this Order, to conduct limited expedited discovery as set forth in this Section. For the purpose of discovering (1) the nature, location, status, and extent of Defendants' Assets, (2) the nature and location of Documents reflecting the Defendants' businesses, business transactions and operations, or (3) the applicability of any evidentiary privileges, Counsel for the Commission may:

A.    Take the deposition of any Person, on three (3) days of notice. The limitations and conditions set forth in Rules 30(a)(2)(A)(ii) and 31(a)(2)(A)(ii) of the Federal Rules of Civil Procedure regarding subsequent depositions of an individual shall not apply to depositions taken pursuant to this Section. Any such deposition taken pursuant to this Section shall not be counted towards the deposition limit set forth in Rules 30(a)(2)(A)(I) and 31(a)(2)(A)(I); and

B.    Demand the production of Documents, on five (5) days of notice, from any Person, whether or not a party, provided that three (3) days of notice shall be deemed sufficient for the production of any such Documents that are maintained or stored only in an electronic format.

30

Service of discovery upon a party to this lawsuit, taken pursuant to this Section, shall be sufficient if made by facsimile or by overnight delivery. Any expedited discovery taken pursuant to this Section is in addition to, and is not subject to, the limits on discovery set forth in the Federal Rules of Civil Procedure and Local Rules of this Court. The expedited discovery permitted by this Section does not require a meeting or conference of the parties, pursuant to Rules 26(d) & (f) of the Federal Rules of Civil Procedure.

The Parties are exempted from making initial disclosures under Federal Rule of Civil Procedure 26(a)(1)(B) and Local Rule 3.05 until further order of this Court.

## XXV. SERVICE OF THIS ORDER

**IT IS FURTHER ORDERED** that this Order may be served on any Person (including any financial institution) that may have possession, custody or control of any property, property right, Document, or Asset of any Defendant, or that may be subject to any provision of this Order pursuant to Rule 65(d)(2) of the Federal Rules of Civil Procedure, by any means, including U.S. First Class Mail, overnight delivery, facsimile, email or personal service, by agents or employees of Plaintiff, by agents or employees of the Receiver, by any law enforcement agency, by private process server, or by any person or entity permitted by the Federal Rules of Civil Procedure to effect service. For purposes of this Section, service upon any branch, subsidiary, affiliate or office of any entity shall effect service upon the entire entity. This Order shall bind Persons (including entities) that may be subject to any provision of this Order pursuant to Rule 65(d)(2) of the Federal Rules of Civil Procedure upon such Person's receipt of actual notice, by personal service or otherwise, of this Order. *See* FED. R. CIV. P. 65(d)(2).

31

## XXVI. CORRESPONDENCE AND SERVICE ON COMMISSION

**IT IS FURTHER ORDERED** that, for the purpose of this Order, all correspondence and service

of pleadings on Plaintiff shall be addressed to:

> William Maxson
> Dotan Weinman
> Federal Trade Commission
> 600 Pennsylvania Avenue NW
> Mail Stop H-286
> Washington, DC 20580
> (202) 326-2635 (Maxson phone)
> (202) 326-3049 (Weinman phone)
> (202) 326-3395 (fax)
> wmaxson@ftc.gov
> dweinman@ftc.gov

## XXVII. PRELIMINARY INJUNCTION HEARING

**IT IS FURTHER ORDERED** that, pursuant to Fed. R. Civ. P. 65(b), Defendants shall

appear before this Court on **Tuesday, April 5, 2011 at 3:00 p.m.** in Courtroom 13B, Sam M.

Gibbons United States Courthouse, 801 North Florida Ave., Tampa, Florida 33602, to show cause

why this Court should not enter a preliminary injunction, pending final ruling on the Complaint

against Defendants, enjoining the violations of the law alleged in the Commission's Complaint,

continuing the freeze of their Assets, continuing the Receivership, and imposing such additional

relief as may be appropriate.

## XXVIII. BRIEFS & AFFIDAVITS CONCERNING PRELIMINARY INJUNCTION

**IT IS FURTHER ORDERED** that Defendants shall file with the Court and serve on the

Commission's counsel any answering affidavits, pleadings, motions, expert reports or declarations,

and/or legal memoranda no later than seven (7) days prior to the hearing on the Commission's

request for a preliminary injunction. *See* Local Rule 4.06(b)(3). The hearing will be limited to

32

argument of counsel unless the Court grants express leave to the contrary in advance of the hearing.

*See* Local Rule 4.06(b).

### XIX. DURATION OF TEMPORARY RESTRAINING ORDER

**IT IS FURTHER ORDERED** that this Temporary Restraining Order shall expire fourteen

(14) days from the date of entry noted below, unless within such time, the Order is extended for an

additional period pursuant to Federal Rule of Civil Procedure 65(b)(2).

### XXX. SERVICE OF PROCESS

Defendants shall be served with the summons, complaint, moving papers, supporting

evidence, and this Temporary Restraining Order forthwith.

### XXXI. RETENTION OF JURISDICTION

This Court shall retain jurisdiction of this matter for all purposes.

**DONE AND ORDERED** this _23rd_ day of March, 2011, at _1:39 p._.m. EST.


_____
**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to:
Plaintiff

33

# ATTACHMENT J.

FILED

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

2009 NOV 30  PM 3: 48

CT COURT
CT OF FL

|  |  |  |
|---|---|---|
| FEDERAL TRADE COMMISSION, | ) | Case No. 6:09-cv-2021.Orl-18KK |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | *EX PARTE* TEMPORARY |
|  | ) | RESTRAINING ORDER WITH |
| JPM ACCELERATED SERVICES INC., | ) | ASSET FREEZE AND THE |
| a Florida corporation, *et al.*, | ) | APPOINTMENT OF A |
|  | ) | RECEIVER |
| Defendants. | ) |  |
|  | ) |  |

   Plaintiff, Federal Trade Commission ("FTC" or "Commission"), having filed its

Complaint for a Permanent Injunction and Other Equitable Relief in this matter, pursuant to

Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b)

and 57b, and having moved for an *ex parte* Temporary Restraining Order and other relief

pursuant to Rule 65 of the Federal Rules of Civil Procedure, Fed. R. Civ. P. 65, and the Court

having considered the complaint, declarations, exhibits, and memorandum of law filed in

support thereof, and now being advised in the premises finds, that:

   1.    This Court has jurisdiction over the subject matter of this case, and there is

good cause to believe it will have jurisdiction over the parties.

   2.    Venue lies properly with this Court.

   3.    There is good cause to believe that JPM Accelerated Services Inc.; IXE

Accelerated Financial Centers LLC; IXE Accelerated Services Inc.; IXE Accelerated Service

Centers Inc.; MGA Accelerated Services Inc.; World Class Savings Inc.; Accelerated

Savings Inc.; B&C Financial Group Inc.; Jeanie B. Robertson; Brooke Robertson; Ivan X.

Estrella; Jaime M. Hawley; Kimberly Nelson; Paige Dent; Alexander J. Dent; Micha S.

Romano; and Ashley M. Westbrook (herein collectively referred to as "Defendants") have

engaged in, and are likely to engage in the future in, acts and practices that violate Section

5(a) of the FTC Act, 15 U.S.C. § 45(a), as well as various provisions of the Telemarketing

Sales Rule ("TSR"), 16 C.F.R. Part 310, and that the Commission is therefore likely to

prevail on the merits of this action.

4.      There is good cause to believe that immediate and irreparable damage to the

Court's ability to grant effective final relief for consumers in the form of monetary restitution

will occur from the sale, transfer, or other disposition or concealment by Defendants of their

assets or corporate records unless Defendants are immediately restrained and enjoined by

Order of this Court.  There is thus good cause for an asset freeze, the appointment of a

temporary receiver over corporate defendants JPM Accelerated Services Inc.; IXE

Accelerated Financial Centers LLC; IXE Accelerated Services Inc.; IXE Accelerated Service

Centers Inc.; MGA Accelerated Services Inc.; World Class Savings Inc.; Accelerated

Savings Inc.; and B&C Financial Group Inc., and for relieving Plaintiff of the duty to provide

Defendants with prior notice of Plaintiff's motion.

5.      Weighing the equities and considering Plaintiff's likelihood of ultimate

success, a Temporary Restraining Order with asset freeze and other equitable relief is in the

public interest.

Page 2 of  37

6.      No security is required of any agency of the United States for issuance of a restraining order.  Fed. R. Civ. P. 65(c).

## DEFINITIONS

For purposes of this Temporary Restraining Order ("Order"), the following definitions shall apply:

1.      **"Asset" or "Assets"** means any legal or equitable interest in, right to, or claim to, any real or personal property, including, but not limited to, "goods," "instruments," "equipment," "fixtures," "general intangibles," "inventory," "checks," or "notes" (as these terms are defined in the Uniform Commercial Code), lines of credit, chattels, leaseholds, contracts, mail or other deliveries, shares of stock, lists of consumer names, accounts, credits, premises, receivables, funds, and all cash, wherever located.

2.      **"Assisting others"** includes but is not limited to: (1) performing customer service functions, including, but not limited to, receiving or responding to consumer complaints; (2) formulating or providing, or arranging for the formulation or provision of, any sales script or other marketing material; (3) providing names of, or assisting in the generation of, potential customers; (4) performing or providing marketing or billing services of any kind; (5) acting as an officer or director of a business entity; or (6) providing telemarketing services.

3.      **"Individual Defendants"** means Jeanie B. Robertson; Brooke Robertson; Ivan X. Estrella; Jaime M. Hawley; Kimberly Nelson; Paige Dent; Alexander J. Dent; Micha S. Romano; and Ashley M. Westbrook, and by whatever other names each may be known.

Page 3 of 37

4.     **"Corporate Defendants"** means JPM Accelerated Services Inc.; IXE Accelerated Financial Centers LLC; IXE Accelerated Services Inc.; IXE Accelerated Service Centers Inc.; MGA Accelerated Services Inc.; World Class Savings Inc.; Accelerated Savings Inc.; and B&C Financial Group Inc.; and their successors and assigns, as well as any subsidiaries, and any fictitious business entities or business names created or used by these entities, or any of them.

5.     **"Defendants"** means all of the Individual Defendants and the Corporate Defendants, individually, collectively, or in any combination.

6.     **"Document" or "Documents"** means any materials listed in Federal Rule of Civil Procedure 34(a) and includes writings, drawings, graphs, charts, photographs, audio and video recordings, computer records, and other data compilations from which information can be obtained and translated, if necessary, into reasonably usable form through detection devices. A draft or nonidentical copy is a separate Document within the meaning of the term.

7.     **"Financial Institution"** means any bank, savings and loan institution, credit union, or any financial depository of any kind, including, but not limited to, any brokerage house, trustee, broker-dealer, escrow agent, title company, commodity trading company, or precious metal dealer.

8.     **"Material"** means likely to affect a person's choice of, or conduct regarding, goods or services.

9.      **"Person"** means a natural person, an organization or other legal entity, including a corporation, partnership, sole proprietorship, limited liability company, association, cooperative, or any other group or combination acting as an entity.

10.      **"Plaintiff"** means the Federal Trade Commission ("Commission" or "FTC").

11.      **"Telemarketer"** means any person who, in connection with telemarketing, initiates or receives telephone calls to or from a customer or donor.  16 C.F.R. § 310.2(bb).

12.      **"Telemarketing"** means a plan, program, or campaign (whether or not covered by the Telemarketing Sales Rule, 16 C.F.R. Part 310) which is conducted to induce the purchase of goods or services or a charitable contribution by use of one or more telephones.

13.      **"Receivership Defendants"** means JPM Accelerated Services Inc.; IXE Accelerated Financial Centers LLC; IXE Accelerated Services Inc.; IXE Accelerated Service Centers Inc.; MGA Accelerated Services Inc.; World Class Savings Inc.; Accelerated Savings Inc.; and B&C Financial Group Inc., and their successors and assigns, as well as any subsidiaries, and any fictitious business entities or business names created or used by these entities, or any of them.

14.      **"National Do Not Call Registry"** means the National Do Not Call Registry, which is the "do-not-call" registry maintained by the Federal Trade Commission pursuant to 16 C.F.R. § 310.4(b)(1)(iii)(B).

# I.

## PROHIBITED BUSINESS ACTIVITIES

**IT IS THEREFORE ORDERED** that Defendants, and their officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division, or other device, or any of them, in connection with the telemarketing, advertising, promoting, marketing, proposed sale, or sale of any product or service, are hereby restrained and enjoined from:

A.    Misrepresenting, or assisting others in misrepresenting, directly or indirectly, expressly or by implication, any material fact, including, but not limited to:

1.    that Defendants will substantially lower consumers' credit card interest rates in all or virtually all instances;

2.    that Defendants will save consumers thousands of dollars in a short time in all or virtually all instances as a result of lowered credit card interest rates;

3.    that Defendants will enable consumers to pay off their debts much faster, typically three to five times faster, in all or virtually all instances, as a result of lowered credit card interest rates; and

4.    that Defendants will provide full refunds if consumers do not save thousands of dollars in a short time as a result of lowered credit card interest rates;

Page 6 of 37

B.      Violating, or assisting others in violating, any provision of the Telemarketing

Sales Rule, 16 C.F.R. Part 310, including, but not limited to:

1.      Section 310.3(a)(2)(iii) of the TSR, 16 C.F.R. § 310.3(a)(2)(iii), by

misrepresenting, directly or by implication, that:

a.      Defendants will substantially lower consumers' credit card

interest rates in all or virtually all instances;

b.      Defendants will save consumers thousands of dollars in a short

time in all or virtually all instances as a result of lowered credit

card interest rates; and

c.      Defendants will enable consumers to pay off their debts much

faster, typically three to five times faster, in all or virtually all

instances, as a result of lowered credit card interest rates;

2.      Section 310.3(a)(2)(iv) of the TSR, 16 C.F.R. § 310.3(a)(2)(iv), by

misrepresenting, directly or by implication, that Defendants will provide full refunds if

consumers do not save thousands of dollars in a short time as a result of lowered credit card

interest rates;

3.      Section 310.4(b)(1)(iii)(B) of the TSR, 16 C.F.R. § 310.4(b)(1)(iii)(B),

by engaging in, or causing others to engage in, initiating an outbound telephone call to a

person when that person's telephone number is on the National Do Not Call Registry;

4.      Section 310.4(b)(1)(iii)(A) of the TSR, 16 C.F.R.

§ 310.4(b)(1)(iii)(A), by initiating, or causing others to initiate, an outbound telephone call to

Page 7 of  37

a person who previously has stated that he or she does not wish to receive an outbound telephone call made by or on behalf of the seller whose goods or services are being offered;

     5.     Section 310.4(b)(1)(iv) of the TSR, 16 C.F.R. § 310.4(b)(1)(iv), by abandoning, or causing others to abandon, an outbound telephone call by failing to connect the call to a sales representative within two (2) seconds of the completed greeting of the person answering the call;

     6.     Section 310.4(a)(7) of the TSR, 16 C.F.R. § 310.4(a)(7), by failing to transmit or cause to be transmitted the telephone number and name of the telemarketer or seller to any caller identification service in use by a recipient of a telemarketing call;

     7.     Section 310.4(d)(1), (2) and (3) of the TSR, 16 C.F.R. § 310.4(d)(1), (2) and (3), by failing to disclose truthfully, promptly and in a clear and conspicuous manner the identity of the seller, that the purpose of the call is to sell goods or services, and the nature of the goods or services;

     8.     Section 310.4(b)(1)(v)(B)(ii) of the TSR, 16 C.F.R. § 310.4(b)(1)(v)(B)(ii), by initiating, or causing others to initiate, outbound telephone calls delivering prerecorded messages that do not promptly provide the disclosures required by Section 310.4(d) of the TSR; and

     9.     Section 310.4(b)(1)(v)(A)(*i*)-(*iv*) of the TSR, 16 C.F.R. § 310.4(b)(1)(v)(A)(*i*)-(*iv*), by initiating, or causing others to initiate, an outbound telephone call that delivers a prerecorded message to induce the purchase of any good or service, unless the seller has obtained from the recipient of the call an express agreement, in writing, that:

Page 8 of 37

    a.      The seller obtained only after a clear and conspicuous disclosure that the purpose of the agreement is to authorize the seller to place prerecorded calls to such person;

    b.      The seller obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service;

    c.      Evidences the willingness of the recipient of the call to receive calls that deliver prerecorded messages by or on behalf of a specific seller; and

    d.      Includes such person's telephone number and signature.

## II.

## ASSET FREEZE

**IT IS FURTHER ORDERED** that Defendants, and their officers, agents, servants, employees, and attorneys, and those persons or entities in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division, or other device, or any of them, except as provided herein, as stipulated by the parties, or as directed by further order of the Court, are hereby restrained and enjoined from:

    A.      Transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, spending, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing of any funds, real or personal

property, accounts, contracts, shares of stock, lists of consumer names, or other assets, or any

interest therein, wherever located, including outside the territorial United States, that are:

     1.    owned, controlled, or held by, in whole or in part, for the benefit of, or

subject to access by, or belonging to, any Defendant;

     2.    in the actual or constructive possession of any Defendant; or

     3.    in the actual or constructive possession of, or owned, controlled, or

held by, or subject to access by, or belonging to, any other corporation, partnership, trust, or

any other entity directly or indirectly owned, managed, or controlled by, or under common

control with, any Defendant, including, but not limited to, any assets held by or for any

Defendant in any account at any bank or savings and loan institution, or with any credit card

processing agent, automated clearing house processor, network transaction processor, bank

debit processing agent, customer service agent, commercial mail receiving agency, or mail

holding or forwarding company, or any credit union, retirement fund custodian, money

market or mutual fund, storage company, trustee, or with any broker-dealer, escrow agent,

title company, commodity trading company, precious metal dealer, or other financial

institution or depository of any kind, either within or outside the territorial United States.

     B.    Opening or causing to be opened any safe deposit boxes, commercial mail

boxes, or storage facilities titled in the name of any Defendant, or subject to access by any

Defendant or under any Defendant's control, without providing the Commission prior notice

and an opportunity to inspect the contents in order to determine that they contain no assets

covered by this Section;

Page 10 of 37

C.      Cashing any checks or depositing any payments from customers or clients of

Defendants;

D.      Incurring charges or cash advances on any credit card issued in the name,

singly or jointly, of any Defendant; or

E.      Incurring liens or encumbrances on real property, personal property, or other

assets in the name, singly or jointly, of any Defendant or of any corporation, partnership, or

other entity directly or indirectly owned, managed, or controlled by any Defendant.

Notwithstanding the asset freeze provisions of Sections II.A-E above, and subject to

prior written agreement with the Commission, Individual Defendants, may, upon compliance

with Section IV (Financial Statements), *infra*, pay from their individual personal funds

reasonable, usual, ordinary, and necessary living expenses.

The funds, property, and assets affected by this Section shall include both existing

assets and assets acquired after the effective date of this Order.

## III.

## DUTIES OF THIRD PARTIES HOLDING DEFENDANTS' ASSETS

**IT IS FURTHER ORDERED** that any financial institution, business entity, or

person maintaining or having custody or control of any account or other asset of any

Defendant, or any corporation, partnership, or other entity directly or indirectly owned,

managed, or controlled by, or under common control with any Defendant, which is served

with a copy of this Order, or otherwise has actual or constructive knowledge of this Order,

shall:

    A.      Hold and retain within its control and prohibit the withdrawal, removal, assignment, transfer, pledge, hypothecation, encumbrance, disbursement, dissipation, conversion, sale, liquidation, or other disposal of any of the assets, funds, documents, or other property held by, or under its control:

          1.      on behalf of, or for the benefit of, any Defendant or any other party subject to Section II above;

          2.      in any account maintained in the name of, or for the benefit of, or subject to withdrawal by, any Defendant or other party subject to Section II above; and

          3.      that are subject to access or use by, or under the signatory power of, any Defendant or other party subject to Section II above.

    B.      Deny Defendants access to any safe deposit boxes or storage facilities that are either:

          1.      titled in the name, individually or jointly, of any Defendant, or other party subject to Section II above; or

          2.      subject to access by any Defendant or other party subject to Section II above.

    C.      Provide the Commission, within five (5) days of the date of service of this Order, a sworn statement setting forth:

          1.      The identification number of each account or asset titled in the name, individually or jointly, of any Defendant, or held on behalf of, or for the benefit of, any

Defendant or other party subject to Section II above, including all trust accounts managed on

behalf of any Defendant or subject to any Defendant's control;

      2.     The balance of each such account, or a description of the nature and

value of such asset;

      3.     The identification and location of any safe deposit box, commercial

mail box, or storage facility that is either titled in the name, individually or jointly, of any

Defendant, or is otherwise subject to access or control by any Defendant or other party

subject to Section II above, whether in whole or in part; and

      4.     If the account, safe deposit box, storage facility, or other asset has

been closed or removed, the date closed or removed and the balance on said date.

     D.     Allow representatives of Plaintiff immediate access to inspect and copy, or

upon Plaintiff's request, within five (5) business days of said request, provide the

Commission with copies of all records or other documentation pertaining to each such

account or asset, including, but not limited to, originals or copies of account applications,

account statements, corporate resolutions, signature cards, checks, drafts, deposit tickets,

transfers to and from the accounts, all other debit and credit instruments or slips, currency

transaction reports, 1099 forms, and safe deposit box logs; and

     E.     This Section shall apply to existing accounts and assets, assets deposited or

accounts opened after the effective date of this Order, and any accounts or assets maintained,

held or controlled at any time since November 7, 2007.  This Section shall not prohibit

Page 13 of 37

transfers in accordance with any provision of this Order, any further order of the Court, or by written agreement of the parties.

## IV.

## FINANCIAL STATEMENTS

**IT IS FURTHER ORDERED** that each Defendant shall serve upon counsel for the Commission, no later than five (5) business days after service of this Order, a completed financial statement accurate as of the date of entry of this Order, on the forms served on Defendants with this Order for Individual Defendants and for Corporate Defendants, as the case may be, signed under penalty of perjury.

The financial statements shall include assets held outside the territory of the United States, shall be accurate as of the date of the entry of this Order, and shall be verified under oath. Defendants shall attach to these completed financial statements copies of all local, state, provincial, and federal income and property tax returns, with attachments and schedules, as called for by the instructions to the financial statements.

## V.

## MAINTAIN RECORDS AND REPORT NEW BUSINESS ACTIVITY

**IT IS FURTHER ORDERED** that Defendants, and their officers, agents, servants, employees, and attorneys, and all other persons or entities in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division, or other device, or any of them, are hereby restrained and enjoined from:

A.      Failing to create and maintain books, records, accounts, bank statements, current accountants' reports, general ledgers, general journals, cash receipt ledgers, cash disbursement ledgers and source documents, documents indicating title to real or personal property, and any other data which, in reasonable detail, accurately, fairly and completely reflect the incomes, disbursements, transactions, dispositions, and uses of the Defendants' assets;

B.      Destroying, erasing, mutilating, concealing, altering, transferring, or otherwise disposing of, in any manner, directly or indirectly, any Documents, including electronically-stored materials, that relate in any way to the business practices or business or personal finances of Defendants; to the business practices or finances of entities directly or indirectly under the control of Defendants; or to the business practices or finances of entities directly or indirectly under common control with any other Defendant; and

C.      Creating, operating, or exercising any control over any new business entity, whether newly formed or previously inactive, including any partnership, limited partnership, joint venture, sole proprietorship, or corporation, without first providing Plaintiff with a written statement disclosing: (1) the name of the business entity; (2) the address and telephone number of the business entity; (3) the names of the business entity's officers, directors, principals, managers, and employees; and (4) a detailed description of the business entity's intended activities.

Page 15 of 37

## VI.

### PROHIBITION ON DISCLOSING CUSTOMER INFORMATION

**IT IS FURTHER ORDERED** that Defendants, and their officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, are hereby restrained and enjoined from:

A.      Selling, renting, leasing, transferring, or otherwise disclosing the name, address, birth date, telephone number, email address, Social Security number, Social Insurance number, credit card number, bank account number, or other financial or identifying personal information of any person from whom or about whom any Defendant obtained such information in connection with activities alleged in the FTC's Complaint;

B.      Benefitting from or using the name, address, birth date, telephone number, email address, Social Security number, Social Insurance number, credit card number, bank account number, or other financial or identifying personal information of any person from whom or about whom any Defendant obtained such information in connection with activities alleged in the FTC's Complaint.

Provided, however, that Defendants may disclose such financial or identifying personal information to a law enforcement agency or as required by any law, regulation, or court order.

Page 16 of 37

# VII.

## TEMPORARY RECEIVER

### A.     APPOINTMENT OF TEMPORARY RECEIVER

**IT IS FURTHER ORDERED** that _Robert Morrison_ is
appointed Temporary Equity Receiver ("Receiver") for Receivership Defendants and any of
their affiliates, subsidiaries, divisions, or telephone sales operations, wherever located, with
the full power of an equity receiver.  The Receiver shall be the agent of this Court, and solely
the agent of this Court, in acting as Receiver under this Order.  The Receiver shall be
accountable directly to this Court.  The Receiver shall comply with all Local Rules of this
Court governing receivers.

### B.     RECEIVERSHIP DUTIES

**IT IS FURTHER ORDERED** that the Receiver is directed and authorized to
accomplish the following:

　　　　1.　　Assume full control of the Receivership Defendants by removing, as
the Receiver deems necessary or advisable, any director, officer, employee, independent
contractor, or agent of the Receivership Defendants, including any Individual Defendant,
from control of, management of, or participation in, the affairs of the Receivership
Defendants;

　　　　2.　　Take exclusive custody, control, and possession of all Assets and
Documents of, or in the possession, custody, or under the control of, the Receivership
Defendants, wherever situated.  The Receiver shall have full power to divert mail and to sue

Page 17 of 37

for, collect, receive, take in possession, hold, and manage all Assets and Documents of the

Receivership Defendants and other persons or entities whose interests are now held by or

under the direction, possession, custody, or control of the Receivership Defendants.

Provided, however, that the Receiver shall not attempt to collect any amount from a

consumer, or allow any Receivership Defendant to do so, if the Receiver believes the

consumer was a victim of the deceptive acts or practices alleged in the Complaint in this

matter;

     3.    Use any means necessary to take possession of and to secure all areas

of the business premises of the Receivership Defendants.  Such steps may include, but are

not limited to, the following as the Receiver deems necessary or advisable:  (1) serving this

Order; (2) completing a written inventory of all receivership Assets; (3) obtaining pertinent

information from all employees and other agents of the Receivership Defendants, including,

but not limited to, the name, home address, Social Security number, job description, method

of compensation, and all accrued and unpaid commissions and compensation of each such

employee or agent; (4) videotaping all portions of the locations; (5) securing the locations by

changing the locks and disconnecting any computer modems or other means of access to the

computer or other records maintained at the locations; (6) requiring any persons present on

the premises at the time this Order is served to leave the premises, to provide the Receiver

with proof of identification, or to demonstrate to the satisfaction of the Receiver that such

persons are not removing from the premises Documents or Assets of the Receivership

Page 18 of 37

Defendants; and/or (7) employ the assistance of law enforcement officers as the Receiver deems necessary to implement the provisions of this Order;

      4.    Conserve, hold, and manage all receivership Assets, and perform all acts necessary or advisable to preserve the value of those Assets, in order to prevent any irreparable loss, damage, or injury to consumers or to creditors of the Receivership Defendants, including, but not limited to, obtaining an accounting of the Assets and preventing transfer, withdrawal, or misapplication of Assets, and including the authority to liquidate or close out any open securities or commodity futures positions of the Receivership Defendants;

      5.    Enter into contracts and purchase insurance as advisable or necessary;

      6.    Prevent the inequitable distribution of Assets and determine, adjust, and protect the interests of consumers and creditors who have transacted business with the Receivership Defendants;

      7.    Manage and administer the business of the Receivership Defendants until further order of this Court by performing all incidental acts that the Receiver deems to be advisable or necessary, which includes retaining, hiring, or dismissing any employees, independent contractors, or agents;

      8.    Choose, engage, and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists, as the Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order;

9.      Make payments and disbursements from the receivership estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this Order.  The Receiver shall apply to the Court for prior approval of any payment of any debt or obligation incurred by the Receivership Defendants prior to the date of entry of this Order, except payments that the Receiver deems necessary or advisable to secure Assets of the Receivership Defendants, such as rental payments;

10.      Determine and implement the manner in which the Receivership Defendants will comply with, and prevent violations of, this Order and all other applicable laws;

11.      Institute, compromise, adjust, appear in, intervene in, or become party to such actions or proceedings in state, federal or foreign courts that the Receiver deems necessary and advisable to preserve or recover the Assets of the Receivership Defendants or that the Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order;

12.      Defend, compromise, adjust, or otherwise dispose of any or all actions or proceedings instituted in the past or in the future against the Receiver in his role as Receiver, or against the Receivership Defendants that the Receiver deems necessary and advisable to preserve the Assets of the Receivership Defendants or that the Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order;

13.      Continue and conduct the business of the Receivership Defendants in such manner, to such extent, and for such duration as the Receiver may in good faith deem to

be necessary or appropriate to operate the business profitably and lawfully, if at all; provided, however, that the continuation and conduct of the business shall be conditioned upon the Receiver's good faith determination that the business can be lawfully operated at a profit using the Assets of the receivership estate;

14. Issue subpoenas to obtain Documents and records pertaining to the receivership, and conduct discovery in this action on behalf of the receivership estate;

15. Open one or more bank accounts as designated depositories for funds of the Receivership Defendants. The Receiver shall deposit all funds of the Receivership Defendants in such a designated account and shall make all payments and disbursements from the receivership estate from such an account;

16. Maintain accurate records of all receipts and expenditures that he or she makes as Receiver;

17. Cooperate with reasonable requests for information or assistance from any state or federal law enforcement agency; and

18. File reports with the Court on a timely and reasonable basis.

C.   **COOPERATION WITH THE RECEIVER**

**IT IS FURTHER ORDERED** that:

1. Defendants and their officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division, or other device, or any of them, shall

Page 21 of 37

fully cooperate with and assist the Receiver. This cooperation and assistance shall include, but not be limited to:

      a.     Providing any information to the Receiver that the Receiver deems necessary to exercising the authority and discharging the responsibilities of the Receiver under this Order;

      b.     Providing any password required to access any computer, electronic file, or telephonic data in any medium; or

      c.     Advising all persons who owe money to the Receivership Defendants that all debts should be paid directly to the Receiver.

    2.    Defendants and their officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division, or other device, or any of them, are hereby restrained and enjoined from directly or indirectly:

      a.     Transacting any of the business of the Receivership Defendants;

      b.     Destroying, secreting, defacing, transferring, or otherwise altering or disposing of any Documents of the Receivership Defendants, including, but not limited to, books, records, accounts, writings, drawings, graphs, charts, photographs,

audio and video recordings, computer records, and other data

compilations, electronically-stored records, or any other

records of any kind or nature;

c.    Transferring, receiving, altering, selling, encumbering,

pledging, assigning, liquidating, or otherwise disposing of any

Assets owned, controlled, or in the possession or custody of, or

in which an interest is held or claimed by, the Receivership

Defendants, or the Receiver;

d.    Excusing debts owed to the Receivership Defendants;

e.    Failing to notify the Receiver of any Asset, including accounts,

of the Receivership Defendants held in any name other than the

name of the Receivership Defendants, or by any person or

entity other than the Receivership Defendants, or failing to

provide any assistance or information requested by the

Receiver in connection with obtaining possession, custody, or

control of such Assets;

f.    Doing any act or refraining from any act whatsoever to

interfere with the Receiver's taking custody, control,

possession, or managing of the Assets or Documents subject to

this receivership; or to harass or interfere with the Receiver in

any way; or to interfere in any manner with the exclusive

Page 23 of 37