8.    Choose, engage, and employ attorneys, accountants, appraisers, and other

independent contractors and technical specialists, as the Receiver deems advisable

or necessary in the performance of duties and responsibilities under the authority

granted by this Order;

9.    Make payments and disbursements from the receivership estate that are

necessary or advisable for carrying out the directions of, or exercising the

authority granted by, this Order.  The Receiver shall apply to the Court for prior

approval of any payment of any debt or obligation incurred by the Receivership

Defendants prior to the date of entry of this Order, except payments that the

Receiver deems necessary or advisable to secure assets of the Receivership

Defendants, such as rental payments;

10.    Suspend business operations of the Receivership Defendants if in the

judgment of the Receiver such operations cannot be continued legally and

profitably;

11.    Institute, compromise, adjust, appear in, intervene in, or become party to

such actions or proceedings in state, federal or foreign courts or arbitration

proceedings as the Receiver deems necessary and advisable to preserve or recover

the assets of the Receivership Defendants, or that the Receiver deems necessary

and advisable to carry out the Receiver's mandate under this Order, including, but not limited to, actions challenging fraudulent or voidable transfers;

12.   Defend, compromise, adjust, or otherwise dispose of any or all actions or proceedings instituted in the past or in the future against the Receiver in his role as Receiver, or against the Receivership Defendants, as the Receiver deems necessary and advisable to preserve the assets of the Receivership Defendants, or as the Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order, including any actions or proceedings against consumers who pursue defendants' business ventures;

13.   Issue subpoenas to obtain documents and records pertaining to the receivership, and conduct discovery in this action on behalf of the receivership estate;

14.   Open one or more bank accounts as designated depositories for funds of the Receivership Defendants.  The Receiver shall deposit all funds of the Receivership Defendants in such a designated account and shall make all payments and disbursements from the receivership estate from such an account.  The Receiver shall serve copies of monthly account statements on all parties;

-21-

15.     Maintain accurate records of all receipts and expenditures that he makes as

Receiver; and

16.     Cooperate with reasonable requests for information or assistance from any

state or federal law enforcement agency.

## XI.  TRANSFER OF RECEIVERSHIP PROPERTY TO RECEIVER

**IT IS FURTHER ORDERED** that Defendants and any other person or

entity with possession, custody, or control of property of or records relating to the

Receivership Defendants shall upon notice of this order by personal service or

otherwise immediately notify the Receiver of, and immediately upon receiving a

request from the Receiver, transfer or deliver to the Receiver possession, custody,

and control of, the following:

1.      All assets of the Receivership Defendants;

2.      All documents of the Receivership Defendants, including, but not limited to,

books and records of accounts, all financial and accounting records, balance

sheets, income statements, bank records (including monthly statements, canceled

checks, records of wire transfers, and check registers), client lists, title documents

and other papers;

-22-

3.    All computers and data in whatever form used to conduct the business of the

Receivership Defendants;

4.    All assets belonging to other persons or entities whose interests are now

under the direction, possession, custody, or control of, the Receivership

Defendants; and

5.    All keys, codes, and passwords necessary to gain or to secure access to any

assets or documents of the Receivership Defendants, including, but not limited to,

access to their business premises, means of communication, accounts, computer

systems, or other property.

In the event that any person or entity fails to deliver or transfer any asset or

otherwise fails to comply with any provision of this Paragraph, the Receiver may

file *ex parte* an Affidavit of Non-Compliance regarding the failure.  Upon filing of

the affidavit, the Court may authorize, without additional process or demand,

Writs of Possession or Sequestration or other equitable writs requested by the

Receiver.  The writs shall authorize and direct the United States Marshal or any

sheriff or deputy sheriff of any county, or any other federal or state law

enforcement officer, to seize the asset, document, or any other item covered by this

section, and to deliver it to the Receiver.

## XII. PROVISION OF INFORMATION TO RECEIVER

**IT IS FURTHER ORDERED** that Defendants shall provide to the Receiver, immediately upon request, the following:

1.     A list of all assets and property, including accounts of the Receivership Defendants that are held in any name other than the name of a Receivership Defendant, or by any person or entity other than a Receivership Defendant; and

2.     A list of all agents, employees, officers, servants, or those persons in active concert and participation with the Individual Defendants and Receivership Defendants, who have been associated or done business with the Receivership Defendants.

## XIII.   COOPERATION WITH THE RECEIVER

**IT IS FURTHER ORDERED** that Defendants and all other persons or entities served with a copy of this Order shall fully cooperate with and assist the Receiver in taking and maintaining possession, custody, or control of the assets of the Receivership Defendants.  This cooperation and assistance shall include, but not be limited to:  providing information to the Receiver that the Receiver deems necessary in order to exercise the authority and discharge the responsibilities of the Receiver under this Order; advising all persons who owe money to the

-24-

Receivership Defendants that all debts should be paid directly to the Receiver; transferring funds at the Receivers' direction; and producing records related to the assets and sales of the Receivership Defendants.  The entities obligated to cooperate with the Receiver under this provision include, but are not limited to, banks, broker-dealers, savings and loans, escrow agents, title companies, commodity trading companies, precious metals dealers and other financial institutions and depositories of any kind, and all third-party billing agents, common carriers, and other telecommunications companies, that have transacted business with the Receivership Defendants.

## XIV.  INTERFERENCE WITH THE RECEIVER

**IT IS FURTHER ORDERED** that Defendants are hereby restrained and enjoined from directly or indirectly:

1.      Interfering with the Receiver managing or taking custody, control, or possession of, the assets or documents subject to this receivership;

2.      Transacting any of the business of the Receivership Defendants;

3.      Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any assets owned, controlled, or in the

-25-

possession or custody of, or in which an interest is held or claimed by, the

Receivership Defendants or the Receiver; and

4.     Refusing to cooperate with the Receiver or the Receiver's duly authorized

agents in the exercise of their duties or authority under any order of this Court.

## XV.  STAY OF ACTIONS AGAINST RECEIVERSHIP DEFENDANTS

**IT IS FURTHER ORDERED** that, except by leave of this Court, during

pendency of the receivership ordered herein, Defendants, and all investors,

creditors, stockholders, lessors, customers and other persons seeking to establish

or enforce any claim, right, or interest against or on behalf of a Receivership

Defendant, and all others acting for or on behalf of such persons, are hereby

enjoined from taking action that would interfere with the exclusive jurisdiction of

this Court over the assets or documents of the Receivership Defendants, including,

but not limited to:

1.     Petitioning, or assisting in the filing of a petition, that would cause any

Receivership Defendant to be placed in bankruptcy;

2.     Commencing, prosecuting, or continuing a judicial, administrative, or other

action or proceeding against the Receivership Defendants, including the issuance

or employment of process against the Receivership Defendants, *except* that such

actions may be commenced if necessary to toll any applicable statute of limitations;

3.      Filing or enforcing any lien on any asset of the Receivership Defendants; taking or attempting to take possession, custody, or control of any asset of the Receivership Defendants; or attempting to foreclose, forfeit, alter, or terminate any interest in any asset of the Receivership Defendants, whether such acts are part of a judicial proceeding, are acts of self-help, or otherwise;

4.      Initiating any other process or proceeding that would interfere with the Receiver managing or taking custody, control, or possession of, the assets or documents subject to this receivership.

*Provided that,* this Order does not stay:  (i) the commencement or continuation of a criminal action or proceeding; (ii) the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power; or (iii) the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.

-27-

## XVI.  RECEIVER'S REPORTS

**IT IS FURTHER ORDERED** that the Receiver shall report to this Court

three days before the show cause hearing:  (1) the steps taken by the Receiver to

implement the terms of this Order; (2) the value of all liquidated and unliquidated

assets of the Receivership Defendant; (3) the sum of all liabilities of the

Receivership Defendant; (4) the steps the Receiver intends to take in the future to:

(a) prevent any diminution in the value of assets of the Receivership Defendant;

(b) pursue receivership assets from third parties; and (c) adjust the liabilities of the

Receivership Defendant, if appropriate; and (5) any other matters which the

Receiver believes should be brought to the Court's attention.  Provided, however,

if any of the required information would hinder the Receiver's ability to pursue

receivership assets, the portions of the Receiver's report containing such

information may be filed under seal and not served on the parties.

## XVII.  COMPENSATION OF RECEIVER

**IT IS FURTHER ORDERED** that the Receiver, and all persons or entities

retained or hired by the Receiver as authorized under this Order, shall be entitled

to reasonable compensation for the performance of duties undertaken pursuant to

this Order and for the cost of actual out-of-pocket expenses incurred by them,

from the assets now held by or in the possession or control of, or which may be

received by, the Receivership Defendant. The Receiver shall file with the Court

and serve on the parties on or before the time of the show cause hearing a request

for the payment of such reasonable compensation. The Receiver shall not

increase the fees or rates used as the bases for such fee applications without prior

approval of the Court.

## XVIII.  RECEIVER'S BOND

**IT IS FURTHER ORDERED** that the Receiver shall file with the Clerk of

this Court a bond in the sum of $ 10,000.00  with sureties to be approved

by the Court, conditioned that the Receiver will well and truly perform the duties

of the office and abide by and perform all acts the Court directs.

## XIX.  ACCESS TO BUSINESS OFFICES AND RECORDS

**IT IS FURTHER ORDERED** that, in order to allow the Commission and

the Receiver to preserve assets and evidence relevant to this action, and to

expedite discovery, Defendants shall give the Commission and the Receiver, and

their representatives, agents, and assistants, immediate access to the business

premises of the Receivership Defendants, including, but not limited to, 1395

Marietta Parkway, Suite 105, Marietta, Georgia 30065. The Commission and the

-29-

Receiver, and their representatives, agents, and assistants, are authorized to

employ the assistance of law enforcement officers as they deem necessary to effect

service and to implement peacefully the provisions of this Order. The

Commission and the Receiver, and their representatives, agents, and assistants, are

authorized to remove documents from the Receiver Defendants' premises in order

that they may be inspected, inventoried, and copied for the purpose of preserving

discoverable material in connection with this action. Furthermore, the Receiver

shall allow the Corporate Defendants and Individual Defendants reasonable access

to the premises and business records of the Receivership Defendants within the

Receiver's possession for the purpose of inspecting and copying materials relevant

to this action. The Receiver shall have the discretion to determine the time,

manner, and reasonable conditions of such access.

## XX. EXPEDITED DISCOVERY

**IT IS FURTHER ORDERED** that, in anticipation of the preliminary

injunction hearing in this matter, the Commission and the Receiver are authorized

to conduct expedited discovery concerning Defendants' assets and business

practices in accordance with the following provisions:

-30-

1.      The Commission and the Receiver may take the depositions of parties and

non-parties.  Forty-eight hours (48) notice shall be sufficient notice for such

depositions;

2.      The Commission and the Receiver may serve upon parties requests for

production of documents or inspection that require production or inspection within

five calendar days of service, and may serve subpoenas upon non-parties that

direct production or inspection within five calendar days of service;

3.      The Commission may serve deposition notices and other discovery requests

upon the parties to this action by facsimile or overnight courier, and depositions

may be taken by telephone or other remote electronic means; and

4.      Any discovery taken pursuant to this Order is in addition to, and is not

subject to, the presumptive limits on discovery set forth in the Federal Rules of

Civil Procedure and Local Rules of this Court.  If a Defendant fails to appear for a

properly noticed deposition or fails to comply with a request for production or

inspection, that Defendant may be prohibited from introducing evidence at the

hearing on the Commission's request for a preliminary injunction.

-31-

## XXI. SERVICE BY FACSIMILE AUTHORIZED

**IT IS FURTHER ORDERED** that copies of this Order may be served by any means, including facsimile transmission, upon any financial institution or other entity or person that may have possession, custody, or control of any documents or assets of any Corporate Defendant or Individual Defendant, or that may otherwise be subject to any provision of this Order. Service upon any branch or office of any financial institution shall effect service upon the entire financial institution.

## XXII. DEFENDANTS' DUTY TO DISTRIBUTE ORDER

**IT IS FURTHER ORDERED** that the Corporate Defendants and the Individual Defendants shall immediately provide a copy of this Order to each affiliate, subsidiary, division, sales entity, successor, assign, officer, director, employee, independent contractor, client company, agent, attorney, spouse, and representative of Defendants, and shall, within ten (10) days from the date of entry of this Order, provide the Commission with a sworn statement that: (A) confirms that Defendants have provided copies of the Order as required by this paragraph; and (B) lists the names and addresses of each entity or person to whom Defendants provided a copy of the Order. Furthermore, the Corporate Defendants and

-32-

Individual Defendants shall not take any action that would encourage officers,

agents, directors, employees, salespersons, independent contractors, attorneys,

subsidiaries, affiliates, successors, assigns, or other persons or entities in active

concert or participation with Defendants to disregard this Order or believe that

they are not bound by its provisions.

## XXIII.  DURATION OF TEMPORARY RESTRAINING ORDER

**IT IS FURTHER ORDERED** that the Temporary Restraining Order

granted herein shall expire ten (10) days from the date of entry noted below

unless, within such time, the Order is extended for an additional period not to

exceed ten (10) days for good cause shown, or unless, as to any Corporate

Defendant or Individual Defendant, such Defendant consents to an extension for a

longer period.

## XXIV.  ORDER TO SHOW CAUSE REGARDING PRELIMINARY INJUNCTION

**IT IS FURTHER ORDERED**, pursuant to Federal Rule of Civil Procedure

65(b), that each of the Defendants shall appear before this Court on the _2nd_ day

of ___August___, 2006, at ___Two___ o'clock _p_.m., in Room 1756 to show cause, if

there is any, why this Court should not enter a Preliminary Injunction enjoining

-33-

the violations of law alleged in the Commission's Complaint, continuing the

freeze of their assets, continuing the Receivership and imposing such additional

relief as may be appropriate.

## XXV.  BRIEFS AND AFFIDAVITS CONCERNING PRELIMINARY INJUNCTION

**IT IS FURTHER ORDERED** that Defendants must file with the Clerk's

Office and deliver to the counsel for the Commission any brief responding to the

order to show cause why a preliminary injunction should not be entered no later 72

hours before the time scheduled for the hearing.  The parties must file with the

Court and deliver to counsel that have entered an appearance along with any

affidavits and other evidence upon which they intend to rely in connection with

the Commission's request for a preliminary injunction no later than 24 hours

before the time scheduled for the preliminary injunction hearing.  If any party

intends to present the testimony of any witness at the hearing on a preliminary

injunction, that party shall file with the Court and deliver to counsel that have

entered an appearance a statement disclosing the name, address, and telephone

number of any such witness, and either a summary of the witness's expected

testimony, or the witness's affidavit or declaration revealing the substance of the

-34-

witness's testimony, no later than 24 hours before the time scheduled for the

preliminary injunction hearing.

## XXVI. SERVICE UPON PLAINTIFF

**IT IS FURTHER ORDERED** that Defendants shall serve all pleadings,

memoranda, correspondence, affidavits, declarations, or other documents related

to this Order or Plaintiff's motion for a preliminary injunction by facsimile

transmission to (202) 326-3395, by hand delivery to the offices of the Federal

Trade Commission, at 600 Pennsylvania Avenue, NW, Room H-238, Washington,

DC 20580, and addressed to the attention of David Spiegel, or by overnight

shipment through a third-party commercial carrier for delivery at this address.

## XXVII. RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of

this matter for all purposes.

**SO ORDERED,** this 18th day of _____July_____, at 5:01 p.m.,
Eastern Standard Time.

United States District Judge

FILED IN CLERK'S OFFICE
AND A TRUE COPY CERTIFIED, THIS
7/18/06
Luther D. Thomas, Clerk

By: _____
Deputy Clerk

-35-

# ATTACHMENT P.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 4:96CV02225 SNL |
| v. | ) | |
| | ) | Judge Limbaugh |
| RICHARD C. NEISWONGER, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

~~(Proposed)~~
*EX PARTE* TEMPORARY RESTRAINING ORDER
WITH ANCILLARY EQUITABLE RELIEF

On February 28, 1997, pursuant to the stipulation of the parties, this Court entered its

Final Judgment and Order for Permanent Injunction ("Permanent Injunction") in this case.

Plaintiff, the Federal Trade Commission ("Commission" or "FTC"), has moved for an *ex parte*

Temporary Restraining Order with Ancillary Equitable Relief and an Order to Show Cause why

Defendant Richard C. Neiswonger ("Neiswonger"), William S. Reed ("Reed"), and Asset

Protection Group, Inc. ("APG" or "Receivership Defendant") (collectively, "Contempt

Defendants"), should not be held in civil contempt for violating that Permanent Injunction.

The Court has considered Plaintiff's Motion for Temporary Restraining Order with

Ancillary Equitable Relief, and the declarations, exhibits, and memorandum of law submitted in

support thereof, and finds as follows:

1.      This Court has jurisdiction over this matter for all purposes, as specifically reserved in Paragraph XIII ("Retention of Jurisdiction") of the Permanent Injunction.

2.      There is good cause to believe that Contempt Defendants have actual notice of the Permanent Injunction and the ability to comply with that order.

3.      There also is good cause to believe that Contempt Defendants have violated, and continue to violate, the Permanent Injunction.  The evidence submitted with Plaintiff's *ex parte* Motion for Temporary Restraining Order and its Motion for Order to Show Cause, and the supporting memoranda, shows that Contempt Defendants have engaged in prohibited activity in advertising, marketing, promoting, and selling the APG training and business opportunity program, in violation of Paragraphs I and II of this Court's Permanent Injunction.  There is also good cause to believe that Contempt Defendant Neiswonger has further violated the Permanent Injunction by failing to provide proof of a current $100,000 performance bond before marketing the APG Program, in violation of Paragraph V of the Permanent Injunction.

4.      The FTC has not provided notice to Contempt Defendants of its Motions due to the likelihood that advance notice of this action will lead to the dissipation of assets and the destruction of property or evidence.  The FTC's request for *ex parte* relief is premised on Contempt Defendants' continuing order violations, their touted expertise in protecting assets from seizure, and their prior records of dishonest conduct relating to the concealment of assets. Based on the foregoing, there is good cause to issue this order on an *ex parte* basis.

5.      The Court has considered the FTC's likelihood of ultimate success and weighed the equities, and finds that a temporary restraining order providing for an asset freeze, the appointment of a temporary Receiver, the preservation of business records, financial disclosures,

2

expedited discovery, and other equitable relief is in the public interest.

     6.     FED. R. CIV. P. 65(c) does not require security of the United States or an officer or agency thereof.

## DEFINITIONS

For the purposes of this Temporary Restraining Order, the following definitions apply:

     A.     "APG Program" means the training and business opportunity program marketed and sold by Contempt Defendants, including the training session, course of instruction, class material, and business affiliation provided therein.

     B.     "Assets" means any legal or equitable interest in, right to, or claim to, any and all real and personal property of Contempt Defendants, or held for the benefit of Contempt Defendants, including but not limited to chattel, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds, inventory, checks, notes, accounts, credits, receivables, shares of stock, contracts,  and all cash and currency, or other assets, or any interest therein, wherever located.

     C.     "Contempt Defendants" means Richard C. Neiswonger, William S. Reed, and Asset Protection Group, Inc., and each of them, individually and jointly, and their successors and assigns.

     D.     "Document" shall mean the complete original and any non-identical copy (whether different from the original because of notations on the copy or otherwise) of any written, typed, printed, transcribed, taped, recorded, computer-stored, or graphic matter of any kind, including but not limited to any books, records, writings, correspondence, handwritten notes, appointment books, day books, diaries, receipts and receipt books, cancelled checks and

3

check registers, bank statements, accounting data, ledgers, corporate documents, tax returns,

contracts, files, invoices, tabulations, phone logs, phone scripts, advertisements, marketing

materials, membership records and lists, refund records, drawings, graphs, charts, photographs,

audio and video recordings, manuals, guides, outlines, code books, electronically-stored records,

computer media, servers, e-mail, print-outs, and any other kinds of data compilations or papers.

     E.     "Program" means any training session, course of instruction, class material,

computer software, affiliation, association, newsletter, period of support, joint venture

opportunity or combination thereof advertised, marketed, offered or sold by any of the Contempt

Defendants.

     F.     "Receiver" or "Temporary Receiver" shall mean the temporary receiver appointed

in Paragraph V of this Order.  The term "temporary receiver" also includes any deputy receivers

or agents as may be named by the temporary receiver.

     G.     "Receivership Defendant" means Asset Protection Group, Inc. and its

subsidiaries, affiliates, divisions, successors, and assigns.

## I.
## CONDUCT PROHIBITIONS

**IT IS HEREBY ORDERED** that Contempt Defendants, their successors and assigns,

officers, agents, servants and employees, and those persons in active concert or participation with

them who receive actual notice of this Order by personal service or otherwise, in connection with

advertising, promoting, marketing, offering for sale, selling, or otherwise inducing participation

in the APG Program or any other program are hereby temporarily restrained and enjoined from:

4

A.      misrepresenting, directly or by implication, any material fact, including, but not limited to, any representation that consumers will earn a six-figure income, a $150,000 income, or words of similar import, from participation in any program; and

B.      failing to disclose to consumers in advance of any purchase all material facts, including, but not limited to, the amount of remuneration or any other benefit received by each reference whose name is provided to the prospective purchaser.

## II.
## ADDITIONAL CONDUCT PROHIBITIONS WITH RESPECT TO DEFENDANT NEISWONGER

Defendant Neiswonger is further temporarily restrained and enjoined from advertising, marketing, offering for sale or selling the APG Program or any other program until he provides proof of a performance bond in the principal sum of $100,000, made in favor of the Federal Trade Commission for the benefit of any party injured as a result of any violation of the Permanent Injunction.

## III.
## ASSET FREEZE

**IT IS FURTHER ORDERED** that Contempt Defendants are hereby temporarily restrained and enjoined from directly or indirectly:

A.      Transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, spending, withdrawing, granting a lien or security interest in, or otherwise disposing of any assets, wherever located, including outside the United States, that are (1) owned or controlled, directly or indirectly, by any Contempt Defendant, in whole or in part, or held, in whole or in part for the benefit of Contempt Defendants; (2) in the

5

actual or constructive possession of any Contempt Defendant; or (3) owned, controlled by, or in the actual or constructive possession of any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by, or under common control with any Contempt Defendant, including but not limited to, any assets held by, for, or under the name of any Contempt Defendant at any bank, savings and loan institution, or Contempt Defendant bank, or with any broker-dealer, escrow agent, title company, commodity trading company, precious metal dealer, or other financial institution or depository of any kind;

     B.     Opening or causing to be opened any safe deposit boxes titled in the name of any Contempt Defendant, or subject to access by Contempt Defendants;

     C.     Incurring charges or cash advances on any credit card, debit card, or checking card issued in the name, singly or jointly, of any Contempt Defendant;

     D.     Obtaining a personal or secured loan;

     E.     Incurring liens or encumbrances on real property, personal property or other assets in the name, singly or jointly of any Contempt Defendant; and

     F.     Cashing any checks from consumers for programs or asset protection products or services, or any combination thereof.

     The assets affected by this Paragraph shall include (a) all assets of Contempt Defendants as of the time this Order is entered; and (b) those assets obtained after entry of this Order that are derived from any conduct that violates the Permanent Injunction.  This Paragraph does not prohibit transfers to the Receiver, as specifically required in Paragraphs VII and XI of this Order.

6

## IV.
## RETENTION OF ASSETS BY FINANCIAL INSTITUTIONS
## AND OTHER THIRD PARTIES

**IT IS FURTHER ORDERED** that any financial or brokerage institution, escrow agent,

title company, commodity trading company, trust, entity, or person that holds, controls or

maintains custody of any account or asset owned or controlled by any Contempt Defendant, or

has held, controlled or maintained any account or asset of, or on behalf of, any Contempt

Defendant at any time since the entry of this Court's Permanent Injunction on February 28, 1997,

upon service with a copy of this Order, shall:

A.     Hold and retain within its control and prohibit Contempt Defendants from

withdrawing, removing, assigning, transferring, pledging, encumbering, disbursing, dissipating,

converting, selling, gifting, or otherwise disposing of any of the assets, funds, or other property

held by or on behalf of any Contempt Defendant in any account maintained in the name of or for

the benefit of any Contempt Defendant, in whole or in part, except:

1.     as directed by further order of the Court;

2.     as directed in writing by the Receiver (regarding assets held in the name or for the

benefit of Receivership Defendants); or

B.     Deny the Contempt Defendants access to any safe deposit box titled in the name

of any Contempt Defendant, individually or jointly, or subject to access by any Contempt

Defendant, whether directly or indirectly;

C.     Provide counsel for Plaintiff[1] and the Receiver, within three (3) business days

---

[1]     Counsel for Plaintiff means FTC attorneys Joshua S. Millard and Melinda A.
Claybaugh, and any other FTC attorneys who appear in this action after the entry of this Order.
Counsel for Plaintiff's mailing address for all materials mailed pursuant to this Order is 601 New

7

after being served with a copy of this Order, a certified statement setting forth:

      1.      the identification number of each such account or asset titled (1) in the name, individually or jointly, of any Contempt Defendant; (2) held on behalf of, or for the benefit of, any Contempt Defendant; (3) owned or controlled by any Contempt Defendant; or (4) otherwise subject to access by any Contempt Defendant, directly or indirectly;

      2.      the balance of each such account, or a description of the nature and value of such asset as of the close of business on the day on which this Order is served, and, if the account or other asset has been closed or removed, the date closed or removed, the total funds removed in order to close the account, and the name of the person or entity to whom such account or other asset was remitted; and

      3.      the identification of any safe deposit box that is either titled in the name of any Contempt Defendant, or is otherwise subject to access by any Contempt Defendant;

      4.      if an account, safe deposit box, or other asset has been closed or removed, the date closed or removed, the balance on such date, and the manner in which such account or asset was closed or removed.

      D.      Provide counsel for Plaintiff or the Receiver, within three (3) business days after being served with a request, copies of all documents pertaining to such account or asset, including but not limited to originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit

---

Jersey Ave., N.W., Suite NJ-2122, Washington, D.C. 20001.  Counsel for Plaintiff's fax number is (202) 326-2558.

and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box

logs; *provided that* such institution or custodian may charge a reasonable fee not to exceed ten

cents per page copied.

      E.      Cooperate with all reasonable requests of the Receiver relating to this Order's

implementation.

## V.
## APPOINTMENT OF TEMPORARY RECEIVER

    **IT IS FURTHER ORDERED** that ___Robb Evans___ is appointed

temporary Receiver for Receivership Defendant Asset Protection Group, Inc., and any affiliates

or subsidiaries thereof that the Receivership Defendant controls, with the full power of an equity

Receiver.  The Receiver shall be the agent of this Court and solely the agent of this Court in

acting as Receiver under this Order.  The Receiver shall be accountable directly to this Court.

The Receiver shall comply with all local rules and laws governing federal equity receivers.

## VI.
## DUTIES AND AUTHORITY OF RECEIVER

    **IT IS FURTHER ORDERED** that the Receiver is directed and authorized to

accomplish the following:

      A.      Assume full control of the Receivership Defendant by removing, as the Receiver

deems necessary or advisable, any director, officer, independent contractor, employee, attorney,

or agent of the Receivership Defendant, including any Contempt Defendant(s), from control of,

management of, or participation in, the affairs of the Receivership Defendant.

      B.      Take exclusive custody, control and possession of all assets and documents of, or

in the possession, custody, or under the control of, the Receivership Defendant, wherever

situated.  The Receiver shall have full power to divert mail and to sue for, collect, receive, take in possession, hold, and manage all assets and documents of the Receivership Defendant and other persons or entities whose interests are now held by or under the direction, possession, custody, or control of the Receivership Defendant.

C.       Take all steps necessary to secure the business premises of the Receivership Defendant, which may include, but are not limited to, taking the following steps as the Receiver deems necessary or advisable:  (1) serving and filing this Order; (2) completing a written inventory of all receivership assets; (3) obtaining pertinent information from all employees and other agents of the Receivership Defendant, including, but not limited to, the name, home address, social security number, job description, method of compensation, and all accrued and unpaid commissions and compensation of each such employee or agent; (4) video-recording all portions of the location; (5) changing the locks and disconnecting any computer modems or other means of access to the computer or other documents maintained at that location; or (6) requiring any persons present on the premises at the time this Order is served to leave the premises, to provide the Receiver with proof of identification, and/or to demonstrate to the satisfaction of the Receiver that such persons are not removing from the premises documents or assets of the Receivership Defendant.  Such authority shall include, but not be limited to, the authority to order any owner, director, or officer of any Receivership Defendant to remove him or herself from the business premises.

D.       Conserve, hold, and manage all receivership assets, and perform all acts necessary or advisable to preserve the value of those assets, in order to prevent any irreparable loss, damage, or injury to consumers, including, but not limited to, obtaining an accounting of the

10

assets and preventing transfer, withdrawal, or misapplication of assets.

E.       Enter into contracts and purchase insurance as advisable or necessary.

F.       Prevent the inequitable distribution of assets and to determine, adjust, and protect the interests of consumers and creditors who have transacted business with the Receivership Defendant.

G.       Manage and administer the business of the Receivership Defendant until further order of this Court by performing all incidental acts that the Receiver deems to be advisable or necessary, which includes retaining, hiring, or dismissing any employees, independent contractors, or agents.

H.       Choose, engage, and employ attorneys, accountants, appraisers, investigators, and other independent contractors and technical specialists, as the Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order.

I.       Make payments and disbursements from the receivership estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this Order. The Receiver shall apply to the Court for prior approval of any payment of any debt or obligation incurred by the Receivership Defendant prior to the date of entry of this Order, except payments that the Receiver deems necessary or advisable to secure assets of the Receivership Defendant, such as rental payments.

J.       Collect any money due or owing to the Receivership Defendant.

K.       Institute, compromise, adjust, appear in, intervene in, or become party to such actions or proceedings in state, federal or foreign courts that the Receiver deems necessary and

11

advisable to preserve or recover the assets of the Receivership Defendant or to carry out the Receiver's mandate under this Order.

     L.     Defend, compromise, adjust, or otherwise dispose of any or all actions or proceedings instituted against the Receivership Defendant or the Receiver, that the Receiver deems necessary and advisable to preserve the assets of the Receivership Defendant or to carry out the Receiver's mandate under this Order.

     M.     Continue and conduct the businesses of the Receivership Defendant in such manner, to such extent, and for such duration as the Receiver may in good faith deem to be necessary or appropriate to operate the businesses profitably, using the assets of the receivership estate, and lawfully, if at all.

     N.     Take depositions and issue subpoenas to obtain documents and records pertaining to the receivership and compliance with this Order and the Permanent Injunction.  Subpoenas may be served by agents or attorneys of the  Receiver and by agents of any process server retained by the Receiver.

     O.     Open one or more bank accounts as designated depositories for funds of the Receivership Defendant. The Receiver shall deposit all funds of the Receivership Defendant in such a designated account and shall make all payments and disbursements from the receivership estate from such an account.

     P.     Maintain accurate records of all receipts and expenditures made by the Receiver.

**VII.**
**DELIVERY OF RECEIVERSHIP PROPERTY**

**IT IS FURTHER ORDERED** that immediately upon service of this Order upon them,

12

the Contempt Defendants, including the Receivership Defendant, shall forthwith or within such

time as permitted by the Receiver in writing, deliver to the Receiver possession and custody of:

A.     All funds, assets, and property of the Receivership Defendant, whether situated

within or outside the territory of the United States, which are:  (1) held by Receivership

Defendant, individually or jointly, (2) held for the benefit of Receivership Defendant, or

(3) under Receivership Defendant's direct or indirect control, individually or jointly;

B.     All documents of the Receivership Defendant, including but not limited to all

books and records of assets including funds and property, all financial and accounting records,

balance sheets, income statements, bank records (including monthly statements, canceled checks,

records of wire transfers, records of ACH transactions, and check registers), corporate minutes,

contracts, customer and consumer lists, title documents, and electronic records;

C.     All funds and other assets belonging to members of the public now held by the

Receivership Defendant;

D.     All keys, computer and other passwords, entry codes, combinations to locks

required to open or gain access to any of the property or effects, and all monies in any bank

deposited to the credit of the Receivership Defendant, wherever situated; and

E.     Information identifying the accounts, employees, properties, or other assets or

obligations of the Receivership Defendant.

## VIII.
## TRANSFER OF FUNDS TO THE RECEIVER
## BY FINANCIAL INSTITUTIONS AND OTHER THIRD PARTIES

**IT IS FURTHER ORDERED** that, upon service of a copy of this Order, any financial or

brokerage institution or depository, escrow agent, title company, commodity trading company, or

13

trust shall cooperate with all reasonable requests of counsel for Plaintiff and the Receiver relating to implementation of this Order, including transferring funds at the Receiver's direction and producing records related to the assets and sales of the Receivership Defendant.

## IX.
## COOPERATION WITH THE RECEIVER

**IT IS FURTHER ORDERED** that Contempt Defendants shall fully cooperate with and assist the Receiver. Contempt Defendants' cooperation and assistance shall include, but not be limited to, providing any information to the Receiver that the Receiver deems necessary to exercise the authority and discharge the responsibilities of the Receiver under this Order; providing any password required to access any computer or electronic files or information in any medium; or advising all persons who owe money to the Receivership Defendant that all debts should be paid directly to the Receiver. Contempt Defendants are hereby restrained and enjoined from directly or indirectly:

A.    Transacting any of the business of the Receivership Defendant;

B.    Excusing debts owed to the Receivership Defendant;

C.    Destroying, secreting, defacing, transferring, or otherwise altering or disposing of any documents of the Receivership Defendant;

D.    Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any assets owned, controlled, or in the possession or custody of, or in which an interest is held or claimed by, the Receivership Defendant, or the Receiver;

E.    Failing to notify the Receiver of any asset, including accounts, of a Receivership

14

Defendant held in any name other than the name of the Receivership Defendant or by any person or entity other than the Receivership Defendant or failing to provide any assistance or information requested by the Receiver in connection with obtaining possession, custody, or control of such assets; or

      F.      Doing any act or thing whatsoever to interfere with the Receiver's taking and keeping custody, control, possession, or managing of the assets or documents subject to this receivership; or to harass or interfere with the Receiver in any way; or to interfere in any manner with the exclusive jurisdiction of this Court over the assets or documents of the Receivership Defendant; or to refuse to cooperate with the Receiver or the Receiver's duly authorized agents in the exercise of their duties or authority under any Order of this Court.

      This Paragraph does not prohibit transfers to the Receiver, as specifically required in Paragraphs VII and XI of this Order.

## X.
## FINANCIAL REPORTS

      **IT IS FURTHER ORDERED** that each Contempt Defendant shall, within two (2) business days after service of this Order, prepare and serve on counsel for Plaintiff and the Receiver:

      A.      Completed financial statements fully disclosing their own finances and those of all corporations, partnerships, trusts or other entities that they now own, control, or are associated with in any capacity on the forms attached to this Order as **Attachments A and B**, accurate as of the date of service of this Order upon Contempt Defendants; and

      B.      Copies of signed and completed federal and state income tax forms, including all

15

schedules and attachments for the three most recent filing years.

Contempt Defendants shall provide copies of such other financial statements as the Receiver or Plaintiff may, from time to time, request in order to monitor Contempt Defendants' compliance with the provisions of this Order.

## XI.
## FOREIGN ASSET REPATRIATION

**IT IS FURTHER ORDERED** that, within three (3) business days following the service of this Order, each Contempt Defendant shall:

A.      Provide counsel for Plaintiff and the Receiver with a full accounting of all funds and assets outside of the territory of the United States which are held either: (1) by Contempt Defendant; (2) for Contempt Defendant's benefit; or (3) under Contempt Defendant's direct or indirect control, individually or jointly, as required by the forms included in **Attachments A and B**;

B.      Transfer to the territory of the United States all such funds and assets in foreign countries; and

C.      Hold and retain all repatriated funds and assets, and prevent any transfer, disposition, or dissipation whatsoever of any such assets or funds, except as required by this Order.

Contempt Defendants shall provide access to records and documents held by financial institutions outside the territorial United States, by signing the Consent to Release of Financial Records attached to this Order as **Attachment C**, immediately upon service of this Order upon them, or within such time as permitted by the Receiver or counsel for Plaintiff in writing.

16

## XII.
## NON-INTERFERENCE WITH REPATRIATION

**IT IS FURTHER ORDERED** that Contempt Defendants, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are hereby temporarily restrained and enjoined from taking any action, directly or indirectly, which may result in the encumbrance or dissipation of foreign assets, or in the hindrance of the repatriation required by the preceding Paragraph XI of this Order, including but not limited to:

A.       Sending any statement, letter, fax, e-mail or wire transmission, telephoning or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the terms of a foreign trust agreement, until such time that all assets have been fully repatriated pursuant to Paragraph XI of this Order; and

B.       Notifying any trustee, protector or other agent of any foreign trust or other related entities of either the existence of this Order, or of the fact that repatriation is required pursuant to a Court Order, until such time that all assets have been fully repatriated pursuant to Paragraph XI of this Order.

## XIII.
## RECEIVER'S REPORTS

**IT IS FURTHER ORDERED** that the Receiver shall report to this Court on or before the date set for the hearing to Show Cause regarding the Preliminary Injunction or the hearing to Show Cause regarding the Contempt Motion, whichever occurs first, on: (1) the steps taken by the Receiver to implement the terms of this Order; (2) the value of all liquidated and unliquidated assets of the Receivership Defendant; (3) the sum of all liabilities of the Receivership Defendant;

17

(4) the steps the Receiver intends to take in the future to: (a) prevent any diminution in the value of assets of the Receivership Defendant; (b) pursue receivership assets from third parties; and (c) adjust the liabilities of the Receivership Defendant, if appropriate; and (5) any other matters which the Receiver believes should be brought to the Court's attention.  Provided, however, if any of the required information would hinder the Receiver's ability to pursue receivership assets, the portions of the Receiver's report containing such information may be filed under seal and not served on the parties.

## XIV.
## RECEIVER'S BOND

**IT IS FURTHER ORDERED** that the Receiver shall file with the Clerk of this Court a bond in the sum of $100,000.00 with sureties to be approved by the Court, conditioned that the Receiver will well and truly perform the duties of the office and abide by and perform all acts the Court directs.

## XV.
## COMPENSATION OF RECEIVER

**IT IS FURTHER ORDERED** that the Receiver, and all persons or entities retained or hired by the Receiver as authorized under this Order, shall be entitled to reasonable compensation for the performance of duties undertaken pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by them, from the assets now held by or in the possession or control of, or which may be received by, the Receivership Defendant.  The Receiver shall file with the Court and serve on the parties a request for the payment of reasonable compensation at the time of the filing of any report required by Paragraph XIII.  The Receiver shall not increase the fees or rates used as the bases for such fee applications without prior approval of the Court.

18

## XVI.
## RECEIVER AND COMMISSION ACCESS TO
## BUSINESS PREMISES AND RECORDS

**IT IS FURTHER ORDERED** that Contempt Defendants shall allow counsel for

Plaintiff, the Receiver, and their respective representatives, agents, contractors, or assistants,

immediate access to any business premises and storage facilities owned, controlled, or used by

the Receivership Defendant as well as any other location where the Receivership Defendant has

conducted business and where property or business records are likely to be located.  Such

locations include, but are not limited to, the offices and facilities of the Receivership Defendant

at or in the vicinity of 4601 West Sahara Avenue, Las Vegas, NV, 89102.

Counsel for Plaintiff and the Receiver are authorized to employ the assistance of law

enforcement officers as deemed necessary, to effect service and to implement peacefully the

provisions of this Order.  The Receiver shall allow counsel for Plaintiff into the premises and

facilities described in this Paragraph and shall allow counsel for Plaintiff and its representatives,

agents, contractors, or assistants to inspect, inventory, and copy documents relevant to any matter

contained in the Permanent Injunction.  Counsel for Plaintiff and the Receiver may exclude

Contempt Defendants and their agents and employees from the business premises and facilities

during the immediate access.

Contempt Defendants and all agents or employees of Contempt Defendants shall provide

counsel for Plaintiff and the Receiver with any necessary means of access to documents,

including, without limitation, the locations of Contempt Defendants' business premises, keys and

combinations to business premises locks, computer access codes of all computers used to

conduct Receivership Defendant's business, and storage area access information.

19

The Receiver and counsel for Plaintiff shall have the right to remove any documents related to Contempt Defendants' business practices from the premises in order that they may be inspected, inventoried, and copied. The materials so removed shall be returned within three (3) business days of completing said inventory and copying.

If any property, records, documents, or computer files relating to the Receivership Defendant's finances or business practices are located in the residence of any Contempt Defendant or are otherwise in the custody or control of any Contempt Defendant, then such Contempt Defendant shall produce them to the Receiver within twenty-four (24) hours of service of this Order.

## XVII.
## DEFENDANTS' ACCESS TO BUSINESS PREMISES AND RECORDS

**IT IS FURTHER ORDERED** that the Receiver shall allow the Contempt Defendants and their representatives reasonable access to the premises of the Receivership Defendant. The purpose of this access shall be to inspect, inventory, and copy any and all documents and other property owned by or in the possession of the Receivership Defendant, provided that those documents and property are not removed from the premises. The Receiver shall have the discretion to determine the time, manner, and reasonable conditions of such access.

## XVIII.
## PRESERVATION OF RECORDS

**IT IS FURTHER ORDERED** that Contempt Defendants and their successors, assigns, officers, agents, servants, employees and attorneys, and those persons in active concert or participation with him who receive actual notice of this Order by personal service or otherwise, directly or through any corporation or other device, are temporarily restrained and enjoined from

20

destroying, erasing, mutilating, concealing, altering, transferring, or otherwise disposing of, in

any manner, directly or indirectly, any documents that relate to the business practices or finances

of any Contempt Defendant.

## XIX.
## DISCOVERY

**IT IS FURTHER ORDERED** that Plaintiff is permitted to conduct the following

expedited discovery:

      A.      Depositions and subpoenas related to the assets of Contempt Defendants; and

      B.      Depositions of Contempt Defendants and their employees related to Contempt

Defendants' compliance with the Court's Permanent Injunction.  Plaintiff is granted leave,

pursuant to the Federal Rules of Civil Procedure 30(a), to take ~~said~~ _any_ depositions in any judicial

district, at any time after the date of this Order, upon three (3) calendar days' notice.

## XX.
## CONSUMER CREDIT REPORTS

**IT IS FURTHER ORDERED** that pursuant to Section 604(1) of the Fair Credit

Reporting Act, 15 U.S.C. § 1681b(1), any consumer reporting agency may furnish a consumer

report concerning any of Contempt Defendants to counsel for Plaintiff or the Receiver.

## XXI.
## BANKRUPTCY PETITIONS

**IT IS FURTHER ORDERED** that, in light of the appointment of the Receiver, the

Receivership Defendant is hereby prohibited from filing a petition for relief under the United

States Bankruptcy Code, 11 U.S.C. § 101 _et seq._, without prior permission from this Court.

## XXII.
## STAY OF ACTIONS

**IT IS FURTHER ORDERED** that:

A.      Except by leave of this Court, during the pendency of the Receivership ordered herein, Contempt Defendants and all customers, principals, investors, creditors, stockholders, lessors, and other persons seeking to establish or enforce any claim, right or interest against or on behalf of Contempt Defendants, and all others acting for or on behalf of such persons, including attorneys, trustees, agents, sheriffs, constables, marshals, and other officers and their deputies, and their respective attorneys, servants, agents and employees be and are hereby stayed from:

1.      Commencing, prosecuting, continuing, entering, or enforcing any suit or proceeding, except that such actions may be filed to toll any applicable statute of limitations;

2.      Accelerating the due date of any obligation or claimed obligation; filing or enforcing any lien; taking or attempting to take possession, custody, or control of any asset; attempting to foreclose, forfeit, alter, or terminate any interest in any asset, whether such acts are part of a judicial proceeding, are acts of self-help, or otherwise; or

3.      Executing, issuing, serving, or causing the execution, issuance or service of, any legal process, including, but not limited to, attachments, garnishments, subpoenas, writs of replevin, writs of execution, or any other form of process whether specified in this Order or not; or

4.      Doing any act or thing whatsoever to interfere with the Receiver's taking custody, control, possession, or management of the assets or documents subject to this

22

receivership; or to harass or interfere with the Receiver in any way; or to interfere in any manner with the exclusive jurisdiction of this Court over the assets or documents of the Receivership Defendant.

B.      This Paragraph does not stay:

1.      The commencement or continuation of a criminal action or proceeding;

2.      The commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

3.      The enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

4.      The commencement of any action by the Secretary of the United States Department of Housing and Urban Development to foreclose a mortgage or deed of trust in any case in which the mortgage or deed of trust held by the Secretary is insured or was formerly insured under the National Housing Act and covers property, or combinations of property, consisting of five or more living units; or

5.      The issuance to a Contempt Defendant of a notice of tax deficiency.

## XXIII.
## SERVICE OF ORDER

**IT IS FURTHER ORDERED** that copies of this Order may be served by any means, including facsimile transmission or email, by employees or agents of the FTC or the Receiver, upon any financial institution or other entity or person that may have possession, custody, or control of any documents or assets of Contempt Defendants, or that may otherwise be subject to

23

any provision of this Order.  Service upon any branch or office of any financial institution shall

effect service upon the entire financial institution.

## XXIV.
## ACKNOWLEDGMENT OF RECEIPT OF ORDER BY DEFENDANT(S)

**IT IS FURTHER ORDERED** that each Contempt Defendant, within three (3) business

days of receipt of this Order, must submit to counsel for Plaintiff a truthful sworn statement

acknowledging receipt of this Order.

## XXV.
## PROOF OF DISTRIBUTION OF
## TEMPORARY RESTRAINING ORDER
## BY CONTEMPT DEFENDANTS

**IT IS FURTHER ORDERED** that Contempt Defendants shall immediately provide a

copy of this Order to their agents, servants, employees, consultants, and any affiliated businesses,

and other persons and entities subject in any part to their direct or indirect control.  Within five

(5) business days of receipt of this Order, Contempt Defendants must submit to counsel for

Plaintiff a truthful sworn statement identifying those persons and entities to whom this Order has

been distributed.

## XXVI.
## EXPIRATION OF TEMPORARY RESTRAINING ORDER

**IT IS FURTHER ORDERED** that the Temporary Restraining Order granted herein

expires ten (10) days after entry unless, within such time, the Order, for good cause shown, is

extended for an additional period not to exceed ten (10) days, or unless it is extended with the

consent of the parties.

24

## XXVII.
## ORDER TO SHOW CAUSE REGARDING PRELIMINARY INJUNCTION

**IT IS FURTHER ORDERED** that each of the Contempt Defendants shall appear

before this Court on the _26__ day of _July_, 2006, at _9:00_.m. at the Thomas F.

Eagleton Courthouse of the United States District Court for the Eastern District of Missouri, 111

South 10th Street, Room _____, St. Louis, MO 63102, to show cause, if any there be, why this

Court should not enter a Preliminary Injunction, pending a final ruling on Plaintiff's Motion for a

Civil Contempt Order against Contempt Defendants.

## XXVIII.
## RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** the Court shall continue to retain jurisdiction of this

matter for all purposes.

**IT IS SO ORDERED,** this _17__ day of _July_, 2006, at _3_, _P_.m.

STEPHEN N. LIMBAUGH
Senior United States District Judge
United States District Court for the
Eastern District of Missouri

25

# ATTACHMENT Q.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Sealed

Case No. 02-21754 -CV-MARTINEZ

FILED by _//_// D.C.

SEP 2 9 2004

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

FEDERAL TRADE COMMISSION,

Plaintiff,

v.

ASSOCIATED RECORD
DISTRIBUTORS, INC.,

RUSSELL MACARTHUR, et al.,

Defendants.

*EX PARTE* TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE
WHY DEFENDANT RUSSELL MACARTHUR AND RESPONDENT VIRTUAL MEDIA
SYSTEMS, INC. SHOULD NOT BE HELD IN CONTEMPT FOR VIOLATING THE
PERMANENT INJUNCTION

Plaintiff, the Federal Trade Commission ("Commission"), filed an *Ex Parte* Motion for (1)
an Order to Show Cause Why Defendant Russell MacArthur and Respondent Virtual Media
Systems, Inc. ("VMS") (collectively, the "Respondents") Should Not Be Held in Contempt for
Violating the Stipulated Final Judgment and Permanent Injunction as to Defendant Russell
MacArthur ("Permanent Injunction") entered by the Court on May 21, 2003, and (2) a Temporary
Restraining Order Pending the Show Cause Hearing. The Court having considered the
declarations, exhibits, and memorandum of law filed in support, finds that:

1.     This Court has jurisdiction of the subject matter of the Motion, and there is good
cause to believe it will have jurisdiction over all parties hereto;

2.     There is good cause to believe that Respondents have engaged in and are likely to

Page 1 of 15

engage in acts or omissions constituting violations of the Permanent Injunction in connection with marketing and selling business opportunity ventures, and that the Commission is therefore likely to prevail on the merits at the show cause hearing;

3.    Each of the Respondents had notice of the Permanent Injunction, and an ability to comply with the same;

4.    There is good cause to believe that immediate and irreparable damage to the Court's ability to grant effective final relief for consumers in the form of monetary restitution will occur from the sale, transfer, or other disposition or concealment by Respondents of assets or records unless Respondents are immediately restrained and enjoined by Order of this Court.  Therefore, in accordance with Fed. R. Civ. P. 65(b), good cause and the interests of justice requires that this Order be granted without prior notice to Respondents.  Accordingly, the Commission is relieved of the duty to provide Respondents with prior notice of the Commission's motion;

5.    Good cause exists for appointing a temporary receiver for Respondent VMS;

6.    Weighing the equities and considering the Commission's likelihood of ultimate success, a Temporary Restraining Order with an asset freeze, appointment of a temporary receiver, and other equitable relief is in the public interest; and

7.    No security is required of any agency of the United States for issuance of a restraining order.  Fed. R. Civ. P. 65(c).

## DEFINITIONS

For purposes of this Order, the following definitions shall apply:

1.    "Assets" means any legal or equitable interest in, right to, or claim to, any real or personal property, including, but not limited to chattel, goods, instruments, equipment, fixtures, general intangibles, inventory, checks, notes, leaseholds, effects, contracts, mail or other deliveries, shares of stock, lists of consumer names, accounts, credits, lines of credit, premises, receivables, funds, and cash, wherever located, whether in the United States or abroad;

2.    "Respondents" means Russell MacArthur and Virtual Media Systems, Inc.;

3.    "Document" is synonymous in meaning and equal in scope to the usage of the term in Federal Rule of Civil Procedure 34(a), and includes writings, drawings, graphs, charts, photographs, audio and video recordings, computer records, and other data compilations from

which information can be obtained and translated, if necessary, through detection devices into reasonably usable form. A draft or non-identical copy is a separate document within the meaning of the term;

    4.    "Receiver" shall mean the temporary receiver appointed in Section III of this Order and any deputy receivers that may be named by the temporary receiver;

    5.    "Receivership Defendant" shall mean Respondent Virtual Media Systems, Inc.

**ORDER**

**I.    ASSET FREEZE**

**IT IS THEREFORE ORDERED** that Respondents are hereby temporarily restrained and enjoined from:

    1.    Transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, spending, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing of any funds, real or personal property, accounts, contracts, consumer lists, shares of stock, or other assets, or any interest therein, wherever located, that are: (1) owned or controlled by any of the Respondents, in whole or in part, for the benefit of any of the Respondents; (2) in the actual or constructive possession of any Respondent; or (3) owned, controlled by, or in the actual or constructive possession of any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by any Respondent, including, but not limited to, any assets held by or for, or subject to access by, any of the Respondents, at any bank or savings and loan institution, or with any broker-dealer, escrow agent, title company, commodity trading company, precious metals dealer, or other financial institution or depository of any kind;

    2.    Opening or causing to be opened any safe deposit boxes titled in the name of any of the Respondents, or subject to access by any of them;

    3.    Incurring charges or cash advances on any credit card issued in the name, singly or jointly, of any Respondent;

    4.    Obtaining a personal or secured loan encumbering the assets of any Respondent; and

    5.    Incurring liens or other encumbrances on real property, personal property or other assets in the name, singly or jointly, of any Respondent.

Page 3 of 15

*Provided, however*, that the temporary receiver may transfer any assets of Receivership Defendant VMS to a receivership account as authorized in this Order, for the purpose of marshaling the assets of the receivership estate. *Provided further*, that the assets affected by this Section shall include: (1) all assets of any of the Respondents as of the time this Order was entered; and (2) assets obtained after the time this Order was entered if the assets are derived from the conduct alleged in the Commission's Motion for Order to Show Cause.

## II.    RETENTION OF ASSETS AND RECORDS BY FINANCIAL INSTITUTIONS

**IT IS FURTHER ORDERED** that, pending the Show Cause Hearing, any financial or brokerage institution, escrow agent, title company, commodity trading company, business entity, trust, or person that holds, controls or maintains custody of any account or asset of or on behalf of any Respondent, upon service with a copy of this Order, shall:

1.    Hold and retain within its control and prohibit the withdrawal, removal, assignment, transfer, pledge, encumbrance, disbursement, dissipation, conversion, sale, or other disposal of any such asset, except by further order of the Court;

2.    Deny Respondents access to any safe deposit box that is titled in the name, individually or jointly or otherwise subject to access by any of the Respondents;

3.    Provide the Commission's counsel, within five (5) business days of receiving a copy of this Order, a sworn statement setting forth:

   a.    the identification number of each such account or asset titled in the name, individually or jointly, of any Respondent, or held on behalf of, or for the benefit of any Respondent;

   b.    the balance of each such account, or a description of the nature and value of such asset as of the close of business on the day on which this Order is served, and, if the account or other asset has been closed or removed, the date closed or removed, the total funds removed in order to close the account, and the name of the person or entity to whom such account or other asset was remitted; and

   c.    the identification of any safe deposit box that is titled in the name, individually or jointly, of any Respondent, or is otherwise subject to access by any Respondent; and

Page 4 of  15

4.    Upon request by the Commission, promptly provide the Commission with copies of all records or other documentation pertaining to each such account or asset, including but not limited to originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs.

### III.    APPOINTMENT OF TEMPORARY RECEIVER

**IT IS FURTHER ORDERED** that Gerald B. Wald, Esq. is appointed as temporary receiver for Receivership Defendant Virtual Media Systems, Inc. The Receiver shall be the agent of this Court, and solely the agent of this Court, in acting as Receiver under this Order. The Receiver shall be accountable directly to this Court, and is authorized and directed to accomplish the following:

1.    Assume full control of the Receivership Defendant by removing, as the Receiver deems necessary or advisable, any director, officer, independent contractor, employee, or agent of the Receivership Defendant, including Defendant Russell MacArthur, from control of, management of, or participation in, the affairs of the Receivership Defendant;

2.    Take exclusive custody, control, and possession of all assets and documents of, or in the possession, custody, or under the control of, the Receivership Defendant, wherever situated. The Receiver shall have full power to divert mail and to sue for, collect, receive, take in possession, hold, and manage all assets and documents of the Receivership Defendant and other persons or entities whose interests are now under the direction, possession, custody, or control of, the Receivership Defendant. The Receiver shall assume control over the income and profits therefrom and all sums of money now or hereafter due or owing to the Receivership Defendant. *Provided, however*, that the Receiver shall not attempt to collect any amount from a consumer if the Receiver believes the consumer was a victim of the violations of the Permanent Injunction alleged in the Commission's Motion for an Order to Show Cause, without prior Court approval;

3.    Take all steps necessary to secure each location from which the Receivership Defendant operates its business, including but not limited to (i) its premises at 1119 S. 21st Avenue, Suite A & B, Hollywood, Florida 33020, and (ii) its physical and mailing address at 347 Ansin Boulevard, Hallandale, Florida 33005. Such steps may include, but are not limited to, any

Page 5 of 15

of the following, as the Receiver deems necessary or advisable: (1) serving this Order; (2) completing a written inventory of all receivership assets; (3) obtaining pertinent information from all employees and other agents of the Receivership Defendant, including, but not limited to, the name, home address, social security number, job description, passwords or access codes, method of compensation, and all accrued and unpaid commissions and compensation of each such employee or agent; (4) photographing and video taping any or all portions of the location; (5) securing the location by changing the locks and disconnecting any computer modems or other means of access to the computer or other records maintained at that location; and (6) requiring any persons present on the premises at the time this Order is served to leave the premises, to provide the Receiver with proof of identification, or to demonstrate to the satisfaction of the Receiver that such persons are not removing from the premises documents or assets of the Receivership Defendant. Law enforcement personnel, including, but not limited to, police or sheriffs, may assist the Receiver in implementing these provisions in order to keep the peace and maintain security. If requested by the Receiver, the United States Marshal will provide appropriate and necessary assistance to the Receiver to implement this Order;

4.     Conserve, hold, and manage all assets of the Receivership Defendant, and perform all acts necessary or advisable to preserve the value of those assets in order to prevent any irreparable loss, damage, or injury to consumers or creditors of the Receivership Defendant, including, but not limited to, obtaining an accounting of the assets and preventing the unauthorized transfer, withdrawal, or misapplication of assets;

5.     Enter into contracts and purchase insurance as advisable or necessary;

6.     Prevent the inequitable distribution of assets and determine, adjust, and protect the interests of consumers and creditors who have transacted business with the Receivership Defendant;

7.     Choose, engage, and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists, as the Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order;

8.     Make payments and disbursements from the receivership estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this Order.

The Receiver shall apply to the Court for prior approval of any payment of any debt or obligation incurred by the Receivership Defendant prior to the date of entry of this Order, except payments that the Receiver deems necessary or advisable to secure assets of the Receivership Defendant, such as rental payments;

9.     Suspend business operations of the Receivership Defendant if in the judgment of the Receiver such operations cannot be continued legally and profitably;

10.     Institute, compromise, adjust, appear in, intervene in, or become party to such actions or proceedings in state, federal or foreign courts or arbitration proceedings as the Receiver deems necessary and advisable to preserve or recover the assets of the Receivership Defendant, or that the Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order, including but not limited to, actions challenging fraudulent or voidable transfers;

11.     Defend, compromise, adjust, or otherwise dispose of any or all actions or proceedings instituted in the past or in the future against the Receiver in his role as Receiver, or against the Receivership Defendant, as the Receiver deems necessary and advisable to preserve the assets of the Receivership Defendant, or as the Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order;

12.     Issue subpoenas to obtain documents and records pertaining to the receivership; and conduct discovery in this action on behalf of the receivership estate;

13.     Open one or more bank accounts as designated depositories for funds of the Receivership Defendant.  The Receiver shall deposit all funds of the Receivership Defendant in such a designated account and shall make all payments and disbursements from the receivership estate from such an account.  The Receiver shall serve copies of monthly account statements on all parties;

14.     Maintain accurate records of all receipts and expenditures that he makes as Receiver; and

15.     Cooperate with reasonable requests for information or assistance from any state or federal law enforcement agency.

### IV.     ACCESS TO BUSINESS PREMISES AND RECORDS

**IT IS FURTHER ORDERED** that, in order to allow the Commission and the Receiver to

Page 7 of  15

preserve assets and evidence relevant to this action, and to expedite discovery, Respondents shall give the Commission and the Receiver, and their representatives, agents, and assistants, immediate access to the business premises of the Receivership Defendant, including but not limited to: (i) its premises at 1119 S. 21st Avenue, Suite A & B, Hollywood, Florida 33020, and (ii) its physical and mailing address at 347 Ansin Boulevard, Hallandale, Florida 33005. The Commission and the Receiver, and their representatives, agents, and assistants, are authorized to employ the assistance of law enforcement officers as they deem necessary to effect service and to implement peacefully the provisions of this Order.. The Commission and the Receiver, and their representatives, agents, and assistants, are authorized to remove documents from the Receivership Defendant's premises in order that they may be inspected, inventoried, and copied for the purpose of preserving discoverable material in connection with this action. Furthermore, the Receiver shall allow the Respondents reasonable access to the premises and business records of the Receivership Defendant within his possession for the purpose of inspecting and copying materials relevant to this action. The Receiver shall have the discretion to determine the time, manner, and reasonable conditions of such access.

### V.     TRANSFER OF RECEIVERSHIP PROPERTY TO RECEIVER

**IT IS FURTHER ORDERED** that Respondents and any other person or entity with possession, custody or control of property of or records relating to the Receivership Defendant shall, upon notice of this Order by personal service or otherwise, immediately notify the Receiver of, and immediately upon receiving a request from the Receiver, immediately transfer or deliver to the Receiver possession, custody, and control of the following:

1.     All assets of the Receivership Defendant;

2.     All documents of the Receivership Defendant, including, but not limited to, books and records of accounts, all financial and accounting records, balance sheets, income statements, bank records (including monthly statements, canceled checks, records of wire transfers, and check registers), client lists, title documents and other papers;

3.     All computers and data in whatever form used to conduct the business of the Receivership Defendant;

4.     All assets belonging to other persons or entities whose interests are now under the

Page 8 of 15

direction, possession, custody, or control of, the Receivership Defendant; and

5.      All keys, codes, and passwords necessary to gain or to secure access to any assets or documents of the Receivership Defendant, including, but not limited to, access to their business premises, means of communication, accounts, computer systems, or other property.

In the event that any person or entity fails to deliver or transfer any asset or otherwise fails to comply with any provision of this Section, the Receiver may file *ex parte* an Affidavit of Non-Compliance regarding the failure.  Upon filing of the affidavit, the Court may authorize, without additional process or demand, Writs of Possession or Sequestration or other equitable writs requested by the Receiver.  The writs shall authorize and direct the United States Marshal or any sheriff or deputy sheriff of any county, or any other federal or state law enforcement officer, to seize the asset, document, or other thing and to deliver it to the Receiver.

## VI.      PROVISION OF INFORMATION TO RECEIVER

**IT IS FURTHER ORDERED** that Respondents shall provide to the Receiver, immediately upon request, the following:

1.      A list of all assets and property, including accounts, of the Receivership Defendant that are held in any name other than the name of a Receivership Defendant, or by any person or entity other than a Receivership Defendant; and

2.      A list of all agents, employees, officers, servants or those persons in active concert and participation with Defendant MacArthur and the Receivership Defendant, who have been associated or done business with the Receivership Defendant.

## VII.      COOPERATION WITH THE RECEIVER

**IT IS FURTHER ORDERED** that Respondents and all other persons or entities served with a copy of this Order shall fully cooperate with and assist the Receiver in taking and maintaining possession, custody, or control of the assets of the Receivership Defendant.   This cooperation and assistance shall include, but not be limited to:  providing information to the Receiver that the Receiver deems necessary in order to exercise the authority and discharge the responsibilities of the Receiver under this Order; providing any password required to access any computer, electronic file, or telephonic data in any medium; and advising all persons who owe money to the Receivership Defendant that all debts should be paid directly to the Receiver;

Page 9 of 15

transferring funds at the Receiver's direction and producing records related to the assets and sales of the Receivership Defendant.  The entities obligated to cooperate with the Receiver under this provision include, but are not limited to, banks, broker-dealers, savings and loans, escrow agents, title companies, commodity trading companies, precious metals dealers and other financial institutions and depositories of any kind, and all third-party billing agents, common carriers, and other telecommunications companies, that have transacted business with the Receivership Defendant.

## VIII.    INTERFERENCE WITH THE RECEIVER

**IT IS FURTHER ORDERED** that Respondents and all other persons or entities served with a copy of this Order are hereby restrained and enjoined from directly or indirectly:

1.    Interfering with the Receiver managing, or taking custody, control, or possession of, the assets or documents subject to this receivership;

2.    Transacting any of the business of the Receivership Defendant;

3.    Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any assets owned, controlled, or in the possession or custody of, or in which an interest is held or claimed by, the Receivership Defendant, or the Receiver; and

4.    Refusing to cooperate with the Receiver or the Receiver's duly authorized agents in the exercise of their duties or authority under any order of this Court.

## IX.    STAY OF ACTIONS AGAINST RECEIVERSHIP DEFENDANT

**IT IS FURTHER ORDERED** that, except by leave of this Court, during pendency of the receivership ordered herein, Respondents, and all investors, creditors, stockholders, lessors, customers and other persons seeking to establish or enforce any claim, right, or interest against or on behalf of Respondents, and all others acting for or on behalf of such persons, are hereby enjoined from taking action that would interfere with the exclusive jurisdiction of this Court over the assets or documents of the Receivership Defendant, including, but not limited to:

1.    Petitioning, or assisting in the filing of a petition, that would cause the Receivership Defendant to be placed in bankruptcy;

2.    Commencing, prosecuting, or continuing a judicial, administrative, or other action or

proceeding against the Receivership Defendant, including the issuance or employment of process, against the Receivership Defendant, *except* that such actions may be commenced if necessary to toll any applicable statute of limitations;

    3.   ·Filing or enforcing any lien on any asset of the Receivership Defendant, taking or attempting to take possession, custody, or control of any asset of the Receivership Defendant; or attempting to foreclose, forfeit, alter, or terminate any interest in any asset of the Receivership Defendant, whether such acts are part of a judicial proceeding, are acts of self-help, or otherwise;

    4.    Initiating any other process or proceeding that would interfere with the Receiver managing, or taking custody, control, or possession of, the assets or documents subject to this receivership.

    *Provided that,* this Order does not stay:  (i) the commencement or continuation of a criminal action or proceeding; (ii) the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's·police or regulatory power; or (iii) the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.

## X.    COMPENSATION OF RECEIVER

    **IT IS FURTHER ORDERED** that the Receiver and all personnel hired by the Receiver as herein authorized, including counsel to the Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by them, from the assets now held by, in the possession or control of, or which may be received by, the Receivership Defendant.  The Receiver shall file with the Court and serve on the parties periodic requests for the payment of such reasonable compensation, with the first such request filed no more than sixty (60) days after the date of entry of this Order.  The Receiver shall not increase the hourly rates used as the bases for such fee applications without prior approval of the Court.

## XI.    RECEIVER'S BOND

    **IT IS FURTHER ORDERED** that the Receiver shall file with the Clerk of this Court a bond in the sum of $25,000.⁰⁰ ̲ ̲ ̲ ̲ ̲ ̲ ̲  with sureties to be approved by the Court, conditioned

Page 11 of 15

that the Receiver will well and truly perform the duties of the office and abide by and perform all
acts the Court directs.

## XII.    PRESERVATION OF RECORDS

IT IS FURTHER ORDERED that Respondents are hereby temporarily restrained and
enjoined from destroying, erasing, mutilating, concealing, altering, transferring or otherwise
disposing of, in any manner, directly or indirectly, any documents that relate to the business,
business practices, assets, or business or personal finances of any Respondent.  Furthermore,
Respondents are hereby temporarily restrained and enjoined from failing to create and maintain
documents that, in reasonable detail, accurately, fairly, and completely reflect their incomes,
disbursements, transactions, and use of money.

## XIII.    CONSUMER CREDIT REPORTS

IT IS FURTHER ORDERED that pursuant to Section 604(1) of the Fair Credit
Reporting Act, 15 U.S.C. § 1681b(1), any consumer reporting agency may furnish a consumer
report concerning any of the Respondents to the Commission.

## XIV.    FOREIGN ASSET REPATRIATION

IT IS FURTHER ORDERED that within five (5) business days following the service of
this Order, each Respondent shall:

1.      Provide the Commission and the Receiver with a full accounting of all funds,
documents, and assets outside of the United States that are:  (1) titled in the name, individually or
jointly, of any Respondent; or (2) held by any person or entity for the benefit of any Respondent;
or (3) under the direct or indirect control, whether jointly or singly, of any Respondent;

2.      Transfer to the territory of the United States and, in the case of receivership assets,
deliver to the Receiver, all funds, documents, and assets located in foreign countries that are:  (1)
titled in the name individually or jointly of any Respondent; or (2) held by any person or entity,
for the benefit of any Respondent; or (3) under the direct or indirect control, whether jointly or
singly, of any Respondent;

3.      Provide the Commission access to all records of accounts or assets of the
Respondents held by financial institutions located outside the territorial United States by signing
the Consent to Release of Financial Records attached to this Order.

Page 12 of 15

## XV.    INTERFERENCE WITH REPATRIATION

**IT IS FURTHER ORDERED** that Respondents and any other person or entity who receives notice of this Order by personal service or otherwise, are hereby temporarily restrained and enjoined from taking any action, directly or indirectly, which may result in the encumbrance or dissipation of foreign assets, or in the hindrance of the repatriation required by the preceding Section of this Order, including but not limited to:

1.    Sending any statement, letter, fax, e-mail or wire transmission, telephoning or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the terms of a foreign trust agreement until such time that all assets have been fully repatriated pursuant to the preceding Section of this Order;

2.    Notifying any trustee, protector or other agent of any foreign trust or other related entities of either the existence of this Order, or of the fact that repatriation is required pursuant to a Court Order, until such time that all assets have been fully repatriated pursuant to the preceding Section of this Order.

## XVI.    EXPEDITED DISCOVERY

**IT IS FURTHER ORDERED** that, in anticipation of the Show Cause Hearing in this matter, the Commission and the Receiver are authorized to conduct expedited discovery concerning Respondents' assets and business practices in accordance with the following provisions:

1.    The Commission and the Receiver may take the depositions of Respondents and non-Respondents.  Forty-eight hours (48) notice shall be sufficient notice for such depositions;

2.    The Commission and the Receiver may serve upon Respondents requests for production of documents or inspection that require production or inspection within five (5) calendar days of service, and may serve subpoenas upon non-Respondents that direct production or inspection within five (5) calendar days of service;

3.    The Commission may serve deposition notices and other discovery requests upon the Respondents by facsimile or overnight courier, and depositions may be taken by telephone or other remote electronic means; and

4.   Any discovery taken pursuant to this Order is in addition to, and is not subject to, the presumptive limits on discovery set forth in the Federal Rules of Civil Procedure and Local Rules of this Court.  If a Respondents fails to appear for a properly noticed deposition or fails to comply with a request for production or inspection, that Respondent may be prohibited from introducing evidence at the Show Cause Hearing.

## XVII.   SERVICE BY FACSIMILE AUTHORIZED

IT IS FURTHER ORDERED that copies of this Order may be served by any means, including facsimile transmission, upon any financial institution or other entity or person that may have possession, custody, or control of any documents or assets of any Respondent, or that may otherwise be subject to any provision of this Order.  Service upon any branch or office of any financial institution shall effect service upon the entire financial institution.

## XVIII.   RESPONDENTS' DUTY TO DISTRIBUTE ORDER

IT IS FURTHER ORDERED that the Respondents shall immediately provide a copy of this Order to each affiliate, subsidiary, division, sales entity, successor, assign, officer, director, employee, independent contractor, client company, agent, attorney, spouse and representative of Respondents, and shall, within ten (10) days from the date of entry of this Order, provide the Commission with a sworn statement that (A) confirms that Respondents have provided copies of the Order as required by this Section, and (B) lists the names and addresses of each entity or person to whom Respondents provided a copy of the Order.  Furthermore, the Respondents shall not take any action that would encourage officers, agents, directors, employees, salespersons, independent contractors, attorneys, subsidiaries, affiliates, successors, assigns or other persons or entities in active concert or participation with Respondents to disregard this Order or believe that they are not bound by its provisions.

## XIX.   DURATION OF TEMPORARY RESTRAINING ORDER

IT IS FURTHER ORDERED that the Temporary Restraining Order granted herein shall expire ten (10) days from the date of entry noted below unless, within such time, the Order is extended for an additional period not to exceed ten (10) days for good cause shown, or unless, as to any Respondent, such Respondent consents to an extension for a longer period.

Page 14 of 15

### XX.   ORDER TO SHOW CAUSE

**IT IS FURTHER ORDERED**, pursuant to Federal Rule of Civil Procedure 65(b) and this Court's equitable powers, that each of the Respondents shall appear before this Court on the 8th day of October, 2004, at 1:00 o'clock p.m., to show cause, if there is any, why this Court should not find Respondents in contempt and enter a preliminary injunction pending final ruling on the Show Cause Hearing, continuing the asset freeze and the receivership, and imposing such additional relief as may be appropriate.

### XXI.   SERVICE UPON PLAINTIFF

**IT IS FURTHER ORDERED** that Respondents shall serve all pleadings, memoranda, correspondence, affidavits, declarations, or other documents related to this Order or by Plaintiff's Motion for an Order to Show Cause by facsimile transmission to (202) 326-3395, by hand delivery to the offices of the Federal Trade Commission, at 600 Pennsylvania Avenue, NW, Room H-238, Washington, DC 20580, and addressed to the attention of Michael P. Mora, or by overnight shipment through a third-party commercial carrier for delivery at this address.

### XXII.   RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for all purposes.

**SO ORDERED**, this 27 day of Septeber, at 11:17 A.m., Eastern Standard Time.

_____
JOSE E. MARTINEZ
United States District Judge

Certified to be a true and correct copy of the Document on file
... United States
... District Court
Southern District of Florida

by _____ Deputy Clerk

Date Sept. 27 '04

Page 15 of 15

# ATTACHMENT R.

BFI CM (under seal)

# ORIGINAL

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   JUN 2 5 2002   ★

LONG ISLAND OFFICE

| | |
|---|---|
| FEDERAL TRADE COMMISSION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| ESSEX MARKETING GROUP, INC., ) | |
| a New York corporation; ) | |
| ) | |
| WESTBROOK MARKETING GROUP, INC., ) | |
| a New York corporation; ) | |
| ) | CIV. NO. 023415 |
| WESTBROOK MARKETING ASSOCIATES, LLC, ) | |
| a Delaware limited liability company; ) | |
| ) | |
| MANHATTAN VENDING, LLC, ) | STIPULATED TEMPORARY |
| a New York limited liability company; ) | RESTRAINING ORDER FOR |
| ) | ESSEX MARKETING GROUP, |
| RICHARD J. GUADAGNO, a/k/a Rich Dano, ) | WESTBROOK MARKETING |
| Rich Guadano and Richard Guadago, | GROUP, WESTBROOK |
| individually and as an officer or director ) | MARKETING ASSOCIATES, |
| of one or more of the above corporations ) | MANHATTAN VENDING, |
| and/or as a member of one or more of the ) | RICHARD GUADAGNO, AND |
| ) | HENRY SANCHEZ |
| JACK G. SCHWARTZ, individually and ) | |
| as an officer or director of one or more or ) | |
| the above corporations and/or as a member ) | |
| of one or more of the above the limited ) | |
| liability companies; and ) | |
| ) | |
| HENRY SANCHEZ, individually and ) | |
| as an officer or director of one ) | |
| or more of the above corporations ) | |
| and/or as a member of one or more of the ) | |
| above limited liability companies; ) | |
| ) | |
| Defendants. ) | |
| ) | |

Where as Plaintiff, the Federal Trade Commission ("FTC" or "Commission"), having filed its complaint for a permanent injunction and other relief in this matter, pursuant to Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b; and having moved *ex parte* for a Temporary Restraining Order pursuant to Rule 65 of the Federal Rules of Civil Procedure on June 12, 2002, and this Court ordering Plaintiff to notify Defendants of the pending action, and after oral argument on this motion on June 13, 2002, the parties hereby stipulate and agree:

1.      Plaintiff asserts that there is good cause to believe that Defendants Essex Marketing Group, Inc., Westbrook Marketing Group, Inc., Westbrook Marketing Associates, LLC, Manhattan Vending, LLC (hereafter collectively "Westbrook"), Richard J. Guadagno, a/k/a Rich Dano, Rich Guadano and Richard Guadago, ("Guadagno"), Jack G. Schwartz ("Schwartz") and Henry Sanchez ("Sanchez") have engaged and are likely to engage in acts and practices that violate Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and the Federal Trade Commission Trade Regulation Rule entitled "Disclosure Requirements and Prohibitions Concerning Franchising and Business Opportunity Ventures" (the "Franchise Rule"), 16 C.F.R. Part 436, and that the Commission is therefore likely to prevail on the merits of this action.  Defendants deny these assertions.

2.      Plaintiff asserts that there is good cause to believe that the evidence set forth in support of Plaintiff's Motion for a Temporary Restraining Order, Preliminary Injunction, and Other Equitable Relief, and in the accompanying declarations and exhibits, shows that the Defendants have engaged in a concerted course of illegal activity in their dealings with consumers nationwide in connection with the advertising, promotion, offering, sale or servicing of vending machine

business opportunities to consumers nationwide, in violation of Section 5 of the FTC Act, 15

U.S.C. § 45 and the Franchise Rule, 16 C.F.R. Part 436.   Defendants deny these assertions.

3.      Plaintiff asserts that no security is required of any agency of the United States for issuance

of a restraining order.  Fed. R. Civ. P. 65(c).

## ORDER

### Definitions

For purposes of this temporary restraining order, the following definitions shall apply:

1.      "Franchise" and "Franchisee" are defined in Section 436.2(a) of the Federal Trade

Commission Trade Regulation Rule entitled "Disclosure Requirements and Prohibitions

Concerning Franchising and Business Opportunity Ventures" (the "Franchise Rule"), 16 C.F.R.

§ 436.2(a), a copy of which is attached to this Order as Attachment A.

2.      "Business venture" means any written or oral business arrangement, however

denominated, whether or not covered by the Franchise Rule, which consists of the payment of

any consideration for:

      a.      the right or means to offer, sell, or distribute goods or services (whether or

            not identified by a trademark, service mark, trade name, advertising, or

            other commercial symbol); and

      b.      more than nominal assistance to any person or entity in connection with or

            incident to the establishment, maintenance, or operation of a new business

            or the entry by an existing business into a new line or type of business.

3.      "Material" means likely to affect a person's choice of, or conduct regarding,

goods or services;

4.      "Defendants" mean Defendants Essex Marketing Group, Inc., Westbrook Marketing Group, Inc., Westbrook Marketing Associates, LLC, Manhattan Vending, LLC, Richard J. Guadagno, a/k/a Rich Dano, Rich Guadano and Richard Guadago, and Henry Sanchez, any officer, director, employee, or agent, and each of them, and their successors, assigns, officers, agents, servants, employees, attorneys, and all persons or entities directly or indirectly under their control or under common control with them, and all other persons or entities in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any corporation, subsidiary, division, or other device;

5.      "Plaintiff" means the Federal Trade Commission;

6.      "Assets" means any legal or equitable interest in, right to, or claim to, any real and personal property, including, but not limited to chattel, goods, instruments, equipment, fixtures, general intangibles, inventory, checks, notes, leaseholds, effects, contracts, mail or other deliveries, shares of stock, lists of consumer names, accounts, credits, premises, receivables, funds, and cash, wherever located, whether in the United States or abroad;

7.      "Document" is synonymous in meaning and equal in scope to the usage of the term in Federal Rule of Civil Procedure 34(a) and includes writings, drawings, graphs, charts, photographs, audio, and video recordings, computer records, and other data compilations from which the information can be obtained and translated, if necessary, through detection devices into reasonably usable form.  A draft or non-identical copy is a separate document within the meaning of the term; and

Page 4 of 21

8.    "Person" means a natural person, an organization or other legal entity, including a corporation, partnership, sole proprietorship, limited liability company, association, cooperative, or any other group or combination acting as an entity.

## I.    PROHIBITED BUSINESS ACTIVITIES

**IT IS THEREFORE ORDERED** that, in connection with the advertising, promoting, offering for sale, or sale of any business venture, subject to this Court's[2] Order sealing these proceedings, Defendants are hereby temporarily restrained and enjoined from:

A.    Falsely representing, expressly or by implication, either orally or in writing, any material fact, including but not limited to the following:

1.    the income, profits, or sales volume likely to be achieved; and

2.    that they will deliver the vending machines within the agreed upon time or allow purchasers to cancel their contracts; and

B.    Violating or assisting others to violate any provision of the Franchise Rule, 16 C.F.R. Part 436, including but not limited to:

1.    failing to provide any potential franchisee with a complete and accurate disclosure document within the times stated in the Franchise Rule, 16 C.F.R. § 436.1(a);

2.    failing to provide any potential franchisee with an earnings claim document when any earnings claim is made, as required by the Franchise Rule, 16 C.F.R. § 436.1(b)-(e); and

3.    failing to disclose, in immediate conjunction with any earnings claim, the material basis for the claim (or the lack of such basis) and a warning that

Page 5 of 21

the earnings claim is only an estimate, as required by the Franchise Rule,

16 C.F.R. § 436.1(e)(3)-(4).

## II.   CUSTOMER LISTS

**IT IS FURTHER ORDERED** that Defendants are hereby temporarily restrained and

enjoined from selling, renting, leasing, or transferring the name, address, telephone number,

credit card number, debit card number, bank account number, e-mail address, or other identifying

information of any person who paid any money to any Defendant, at any time prior to entry of

this Order, in connection with the sale or offering for sale of vending machine business

opportunities.  Notwithstanding the forgoing, that Defendants may disclose such identifying

information to a law enforcement agency, as required by any law, regulation, or court order, or

may disclose customer names and other identifying information in the ordinary course of

business, including to locating companies.

## III.   ASSET FREEZE

**IT IS FURTHER ORDERED,** except as otherwise provided in Subparagraph F, that

Defendants are hereby temporarily restrained and enjoined from:

      A.     Transferring, converting, encumbering, selling, concealing, dissipating,

disbursing, assigning, spending, withdrawing, or otherwise disposing of any assets that are:

(1) owned or controlled, directly or indirectly, by any of the Defendants, in whole or in part;

(2) titled or held in the name, singly or jointly, of any Corporate Defendant, Limited Liability

Company Defendant or Individual Defendant; or (3) in the actual or constructive possession of

any of the Defendants; or (4) owned, controlled by, or in the actual or constructive possession of

any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled

by, or under common control with, any Defendant, including but not limited to, any assets held

by, for, or under the name of the Defendants at any bank or savings and loan institution, or with

any broker-dealer, escrow agent, title company, commodity trading company, precious metal

dealer, or other financial institution or depository of any kind, including but not limited to,

Washington Mutual (formerly Dime Savings Bank) accounts # 3390423303, # 3390508434,

4390008300 and # 3390508764, and Fleet Bank # 941998581;

B.    Opening or causing to be opened any safe deposit boxes titled in the name of any

Defendant, or subject to access by any Defendant;

C.    Incurring charges or cash advances on any credit card issued in the name, singly or

jointly, of any Defendant;

D.    Obtaining a personal or secured loan;

E.    Incurring liens or other encumbrances on real property, personal property or other

assets in the name, singly or jointly, of the Defendants; and

F.    Notwithstanding the foregoing:

1.    Assets affected by this Section shall be limited to all of the assets of the

Business Defendants and Individual Defendants existing as of 4 p.m., June

13, 2002, including assets that are derived from or traceable to assets

existing as of 4 p.m., June 13, 2002.

2.    The Individual Defendants may each pay customary and ordinary living

expenses not to exceed $1,000, with the exception of rent, mortgage, or

condominium or cooperative maintenance fees which may exceed such

amount.  Any payment, expense, transfer, or disbursement exceeding

Page 7 of 21

$1,000 other than rent, mortgage, or condominium or cooperative maintenance fees may not be paid without prior written approval of the FTC, which written approval shall not be unreasonably withheld, or further order of this Court. Total payments exclusive of rent, mortgage, or condominium or cooperative maintenance fees may not exceed $8,000 without prior written approval of the FTC or further order of this Court.

3.   Plaintiff upon its sole discretion or unless further ordered by the Court, may, and upon written request by Defendants, consent to release frozen assets of the Business Defendants to be used to pay ordinary and customary business expenses–Plaintiff's consent shall be in writing.

4.   All payments for vending machines received by purchasers after 4 p.m., June 13, 2002, are not subject to the freeze if the following conditions are met that: (1) Defendants MV, Guadagno, and Sanchez indicate in writing to the FTC that they provided the purchaser with a complete and accurate basic disclosure statement; (2) Defendants MV, Guadagno, and Sanchez indicate in writing to the FTC that no earnings claims were made orally or in writing to the purchaser by any Defendant or representative of the Defendant; (3) that said purchaser indicates in writing to Defendant MV that purchaser received a basic disclosure statement and the date on which it was received, and that said purchaser indicates that no earnings claims were made orally or in writing to purchaser by MV or representative of MV; (4) Defendants, in accordance with any state law on taping telephone

Page 8 of 21

conversations, tape any conversation between said purchaser and

Defendant MV seeking to confirm that the purchaser received a basic

disclosure statement and the date on which it was received, and that the

purchaser confirms that no earnings claims were made orally or in writing

to purchaser by MV or representative of MV.  Defendants shall retain an

unedited version of the tape and allow the FTC to listen to the tape before

any transaction becomes final.  If a purchaser indicates either that a basic

disclosure document was not received or that any earnings claim without

proper disclosures was made, purchaser shall receive the

"Disclosure/Right to Cancel Statement", substantially in the form attached

to this Order as Attachment B, which allows the purchaser the option to

proceed with or cancel the purchase of vending machines; and (5) any

monies paid to Defendants by each purchaser pursuant this section shall be

first used to pay the full cost of vending machines to the vending machine

manufacturer(s).  The purpose of this subsection is to assure that

purchasers who pay money after June 13, 2002 are assured of getting all of

their contractually promised vending machines.

## IV.   RETENTION OF ASSETS AND RECORDS HELD BY THIRD PARTIES

**IT IS FURTHER ORDERED** that, pending determination of the Commission's request

for a Preliminary Injunction, any financial or brokerage institution, business entity, or person

served with a copy of this Order, that holds, controls or maintains custody of any asset of the

Defendants which is the subject of this Order, or has held, controlled or maintained custody of

Page 9 of 21

any such asset of any Defendant, which is the subject of this Order, at any time since January 1, 2000 shall:

    A.     Prohibit Defendants from withdrawing, removing, assigning, transferring, pledging, encumbering, disbursing, dissipating, converting, selling, or otherwise disposing of any such assets, which are the subject of this Order, except as directed by further order of the Court;

    B.     Deny the Defendants access to any safe deposit box that is:

        1.     Titled in the name of the Defendants, either individually or jointly; or

        2.     Otherwise subject to access by the Defendants, either individually or jointly;

    C.     Provide counsel for the Commission, within five (5) business days of receiving a copy of this Order, a sworn statement setting forth:

        1.     The identification number and description of each such account or asset titled in the name, individually or jointly, of the Defendants, or held on behalf of, or for the benefit of, any Defendant;

        2.     The balance of each such account, or a description of the nature and value of such asset as of the close of business on the day on which this Order is served, and, if the account or other asset has been closed or removed, the date closed or removed, the total funds removed in order to close the account, and the name of the person or entity to whom such account or other asset was remitted; and

Page 10 of 21

3.     The identification of any safe deposit box that is either titled in the name, individually or jointly, of the Defendants, or otherwise subject to access by any Defendant; and

D.     Upon the request of the Commission, promptly provide the Commission with copies of all records or other documentation pertaining to such account or asset, including but not limited to originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs. Any such financial institution, account custodian, or other aforementioned entity shall arrange for Plaintiff to obtain copies of any such records which Plaintiff seeks, *provided* that such institution or custodian may charge a reasonable fee not to exceed ten cents (10¢) per page copied; and

**V.     REPATRIATION OF ASSETS AND DOCUMENTS LOCATED IN FOREIGN COUNTRIES**

**IT IS FURTHER ORDERED** that the Defendants shall:

A.     Within forty-eight (48) hours following the date of this Order, take such steps as are necessary to transfer to the territory of the United States of America all documents and assets that are located outside of such territory and are held by or for the Defendants or are under their direct or indirect control, jointly, severally, or individually;

B.     Within forty-eight (48) hours following the service of this Order, provide counsel for the Commission with a full accounting of all documents and assets that are located outside of such territory and are held by or for the benefit of Defendants or are under their direct or indirect control, whether jointly, severally, or individually;

Page 11 of 21

      C.     Hold and retain all transferred documents and assets and prevent any transfer, disposition, or dissipation whatsoever of any such assets or funds; and

      D.     Provide counsel for the Commission with access to records and documents of the Defendants held by financial institutions outside the territorial United States of America, by signing and delivering to Plaintiff Commission the Consent of Release of Financial Records attached hereto as Attachment C within forty-eight (48) hours of service of this Order.

## VI.   INTERFERENCE WITH REPATRIATION

IT IS FURTHER ORDERED that the Defendants are hereby temporarily restrained and enjoined from taking any action, directly or indirectly, which may result in the encumbrance or dissipation of foreign assets, or in the hindrance of the repatriation required by the preceding Section this Order, including but not limited to:

    A. Sending any statement, letter, fax, e-mail or wire transmission, telephoning or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the terms of a foreign trust agreement until such time that all assets have been fully repatriated pursuant to the preceding Section of this Order;

    B. Notifying any trustee, protector or other agent of any foreign trust or other related entities of either the existence of this Order, or of the fact that repatriation is required pursuant to a Court Order, until such time that all assets have been fully repatriated pursuant to the preceding Section of this Order.

VII.    ACCESS TO DEFENDANTS' BUSINESS PREMISES

IT IS FURTHER ORDERED that Defendants shall allow the Commission's representatives access to Defendants' business premises upon 24 hours written notice and written consent of counsel for Defendants, which shall not be unreasonably withheld, including but not limited to all such premises located at 12 Gates Street, Greenlawn, NY 11740, and all sales offices, branch offices, storage facilities or other offices used by Business Defendants.  The purpose of this access shall be to inspect and copy materials relevant to this action and to inventory the assets of the Defendants including, but not limited to:

A.    Documents evidencing, referring to, or relating to each Defendant's financial status, including but not limited to, the nature or location of any bank account, safe deposit box, or any other asset of any Defendant;

B.    Documents evidencing, referring to, or relating to the telemarketing, advertising, promoting, offering for sale, and selling of vending machine business opportunities to customers and any correspondence, transaction, or other communication by or between any consumer or prospective consumer and any Defendant or any of their representatives, employees, agents, or officers; and

C.    Documents evidencing, or referring to, any correspondence, action, or other communication by or between any law enforcement agency, consumer group, or Better Business Bureau and any Defendant or any of their representatives, employees, agents, or officers.

Defendants shall provide the Commission with all necessary means of access to these documents, including without limitation, keys, lock combinations, and computer access codes. Plaintiff may remove materials from the Defendants' business premises so they may be

Page 13 of 21

inspected, inventoried, and copied, so long as all such documents are returned in the same condition as when they were taken, and returned to the offices from which they were taken within five (5) business days of completing said inventory and copying.  In no event shall Plaintiff retain the materials longer than ten (10) business days.

## VIII.   EXPEDITED DISCOVERY

**IT IS FURTHER ORDERED** that the Commission are granted leave to conduct certain expedited discovery, and that, commencing with the time and date of this Order, in lieu of the time periods, notice provisions, and other requirements of Rules 26, 30, 34, and 45 of the Federal Rules of Civil Procedure, expedited discovery shall proceed as follows:

A.      Pursuant to Fed. R. Civ. P. 30, the Commission may take depositions upon oral examination concerning the nature, location, status, and extent of Defendants' assets; the status and location of documents reflecting Defendants' business transactions; and compliance with this Order, on two (2) days notice of any such deposition.  Deposition transcripts that have not been signed by the witness may be used for purposes of the hearing on the Order to Show Cause Why a Preliminary Injunction Should Not Issue.

*Provided*, that this Subparagraph permitting expedited deposition discovery concerning the nature, location, status, and extent of Defendants' assets, the status and location of documents reflecting Defendants' business transactions, and compliance with this Order, shall not be construed in any manner to preclude Plaintiff's right to take subsequent depositions of the same witnesses on the merits of this action.

*Provided, further,* that any deposition taken pursuant to this Subparagraph is in addition to, and not subject to, the presumptive limits on depositions set forth in Fed. R. Civ. P. 30(a)(2)(A).

B.      Pursuant to Fed. R. Civ. P. 34(b), Defendants shall produce all documents requested by the Commission within two (2) days of service of such request, with production of documents made to the name and address listed in Paragraph XV, or to such other person or place as counsel for the Commission may direct in writing.

*Provided,* that, in the event any of Defendants' documents have been removed from Defendants' premises by, and are in the possession of another law enforcement or investigative agency, the Commission may have immediate access to such documents for purposes of inspection, indexing, and copying, subject to the agency consenting to access by the Commission.

*Provided, further,* that this Sub-Paragraph shall extend to parties and non-parties.

IX.      **FINANCIAL REPORTS**

**IT IS FURTHER ORDERED** that the Defendants, by June 26, 2002, shall prepare and deliver to counsel for the Commission:

A.      Completed financial statements on the forms attached to this Order as Attachments D and E, for themselves individually and for each business entity (whether or not incorporated) under which they conduct business, or of which they are an officer, and for each trust of which they are a trustee.  The financial statements shall be accurate as of the date of entry of this Order; and

B.      Upon request by Plaintiff, all current accountants' reports; all federal tax returns filed since January 1, 1999; documents indicating title to real or personal property; other indicia

Page 15 of 21

of ownership that are now in any of the Defendants' actual or constructive possession; and other

of Defendants' financial and bank records requested by Plaintiff.

X.     **IDENTIFYING INFORMATION RELATING TO ACCOUNTANTS, FINANCIAL PLANNERS, INVESTMENT ADVISORS, STOCK BROKERS AND OTHERS**

IT IS FURTHER ORDERED that the Defendants, within forty-eight (48) hours after

the date of this Order, shall provide counsel for the Commission: (1) the name, address and

telephone number for each accountant, financial planner, investment advisor, stock broker or

other individual, corporation or partnership whom they hire for personal advice or services,

including but not limited to preparation of tax returns and investment advice, since January 1,

2000, and (2) the name, address and telephone number for each accountant, financial planner,

investment advisor, stockbroker or other individual, corporation or partnership who was hired on

behalf of Defendants since January 1, 2000.

XI.    **RECORD KEEPING/BUSINESS OPERATIONS**

IT IS FURTHER ORDERED that the Defendants are hereby temporarily restrained and

enjoined from:

A.     Failing to document and maintain documents that, in reasonable detail, accurately,

fairly, and completely reflect their incomes, disbursements, transactions, and use of money;

B.     Destroying, erasing, mutilating, concealing, altering, transferring, or otherwise

disposing of, in any manner, directly or indirectly, any contracts, accounting data,

correspondence, advertisements, computer tapes, discs, or other computerized records, books,

written or printed records, handwritten notes, telephone logs, telephone scripts, receipt books,

ledgers, personal and business canceled checks and check registers, bank statements,

Page 16 of 21

appointment books, copies of federal, state or local business or personal income or property tax returns, and other documents or records of any kind that relate to the business practices or business or personal finances of the Defendants; and

    C.    Creating, operating, or exercising any control over any business entity, including any partnership, limited partnership, joint venture, sole proprietorship or corporation, without first providing counsel for the Commission with a written statement disclosing: (1) the name of the business entity; (2) the address and telephone number of the business entity; (3) the names of the business entity's officers, directors, principals, managers and employees; and (4) a detailed description of the business entity's intended activities.

## XII.    DISTRIBUTION OF ORDER BY DEFENDANTS

    **IT IS FURTHER ORDERED** that each Defendant shall immediately provide a copy of this Order to each affiliate, subsidiary, division, sales entity, successor, assign, officer, director, sales manager, attorney, and representative of the Defendants, and shall, within ten (10) days from the date of entry of this Order, provide counsel for the Commission with a sworn statement that each Defendant has complied with this provision of the Order, which statement shall include the names and addresses of each such person or entity who received a copy of the Order.  For any employee or independent contractor who solicits business opportunity sales or speaks to prospective business opportunity purchasers, Defendants shall give a statement substantially in the form attached hereto as Attachment F.

## XIII.    BANKRUPTCY PETITIONS

    **IT IS FURTHER ORDERED** that Defendants are hereby prohibited from filing, or causing to be filed, a petition for relief under the United States Bankruptcy Code, 11 U.S.C.

§ 101 et seq., without five (5) days prior written notice to the Commission.

## XIV.   CONSUMER CREDIT REPORTS

**IT IS FURTHER ORDERED** that the Commission may obtain, and must keep

confidential, credit reports concerning any Defendant pursuant to Section 604(1) of the Fair

Credit Reporting Act, 15 U.S.C. § 1681b(1), and that upon written request, any credit reporting

agency from which such reports are requested shall provide them to the Commission.

## XV.   SERVICE OF PLEADINGS

**IT IS FURTHER ORDERED** that:

The issuance of a preliminary injunction shall be determined on the pleadings,

declarations, memoranda, and other exhibits filed by the parties and on oral argument, without

live testimony.  Any party who desires to present live testimony at the hearing shall file a motion

requesting leave to present live testimony, and serve such motion on all opposing parties, not less

than seventy-two (72) hours prior to August 9, 2002.  The request shall set forth in detail the

reasons why an evidentiary hearing is desired and how such hearing would be helpful to the

Court.  In addition, the request shall set forth a witness list that shall include the name, address,

and telephone number of any such witness, and either a summary of the witness' expected

testimony, or the witness' declaration revealing the substance of such witness' expected

testimony. *Provided,* that if service is via overnight delivery, the documents shall be delivered so

that they shall be received by all parties at least seventy-two (72) hours prior to the hearing.

Any party opposing a request to present live testimony shall file its written opposition,

and serve such motion on all parties, not less than twenty-four (24) hours prior to August 5,

2002. Any party opposing a request to present live testimony also shall file its witness list, and

Page 18 of 21

serve such witness list on all parties, not less than twenty-four (24) hours prior to August 5, 2002.

For purposes of this Subparagraph, service shall be by hand, by facsimile transmission, or by overnight delivery service. *Provided,* that if service is via overnight delivery, the documents shall be delivered so that they shall be received by all parties at least twenty-four (24) hours prior to August 5, 2002.

## XVI.  STATUS REPORTS

Defendants shall provide plaintiff with a written report by the close of business of every Monday that includes for the prior business week the following: (1) any sales scripts created or edited; (2) promotional materials created or edited; (3) the sales contracts of any business opportunity sales made and a written acknowledgment by the purchaser that he has received a basic disclosure document and the date they received it; (4) any earnings claims represented by any Defendant or Defendants' representative, either orally or in writing, and the basis and substantiation for such earnings claim as required by the Franchise Rule and a copy of any earnings claim document provided to any purchaser; and (5) a summary of any financial transactions conducted by the Business Defendants—said summary shall specify any payments made to any entity that is over $250.

## XVII. DURATION OF TEMPORARY RESTRAINING ORDER

**IT IS FURTHER ORDERED** that the Temporary Restraining Order granted herein shall remain in effect until this Courts' decision and order on Plaintiff's motion for a Preliminary Injunction.

Page 19 of 21

XVIII.       ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION

IT IS FURTHER ORDERED, pursuant to Federal Rule of Civil Procedure 65(b), that *T y*
*IS DENIED WITHOUT PREJUDICE TO RENEW AND*
Plaintiff's motion for a Preliminary Injunction ~~shall be made~~ returnable on August 5, 2002.

Defendants' answering papers in opposition shall be served on or before July, 22, 2002.

Plaintiff's reply papers shall be served on or before July 30, 2002. *AND ALL PAPERS SHALL BE FILED ON JULY 30, 2002*

### XXVII.   RETENTION OF JURISDICTION

IT IS FURTHER ORDERED that this Court shall retain jurisdiction of this matter for

all purposes.

STIPULATED AND AGREED TO BY:


**PLAINTIFF:**

WILLIAM E. KOVACIC
GENERAL COUNSEL

BARBARA ANTHONY
REGIONAL DIRECTOR
NORTHEAST REGION
FEDERAL TRADE COMMISSION:

DATED: 6/24/02

~~ANN F. WEINTRAUB (AW 3080)~~
~~RONALD L. WALDMAN (RW 2003)~~

Page 20 of 21